James D. ZIMMER and Janis L. Zimmer;
Lawrence R. Lenarz and Marye E. Le-
narz; Leonides Bavas and Maria Ba-
vas; and David M. Weber and Clara M.
Weber, Plaintiffs,

v.

GRUNTAL & CO., INCORPORATED
and Realquest Corporation of
Westland, Inc., Defendants.

Civ. A. No. 89–0650.

United States District Court,
W.D. Pennsylvania.

Dec. 12, 1989.

Jeffrey W. Letwin, Pittsburgh, Pa., for plaintiffs.

Marc J. Sonnenfeld, Philadelphia, Pa., Anne C. Flannery, New York City, for defendants.

## MEMORANDUM OPINION

D. BROOKS SMITH, District Judge.

Plaintiffs have filed a complaint alleging that defendants Gruntal & Co., Incorporated ("Gruntal") and Realquest Corporation of Westland, Inc. ("Realquest") violated the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Plaintiffs also bring pendent state claims for common law fraud, breach of fiduciary duty and breach of the rules of the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD"). Plaintiffs' claims in this action arise from defendants' involvement in an allegedly fraudulent selling scheme designed to induce plaintiffs to invest in a real estate concern known as Woodcrest Associates Limited Partnership. Complaint, Preliminary Statement.

Defendants move to dismiss plaintiffs' RICO, Securities Act and common law fraud claims on grounds that they are insufficiently pleaded. Defendants also assert that the securities and fraud claims are time-barred by the applicable limitations periods. Finally, defendants contend that no cause of action exists for violating the NYSE and NASD Rules.[1] In evaluating a motion to dismiss, we are obligated to construe the allegations of the complaint liberally and to provide the nonmoving party with the benefit of the doubt; therefore, if plaintiffs may prove a set of facts which would entitle them to relief, the complaint may not be dismissed. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).[2]

---

1. In a letter to the Court dated August 24, 1989, plaintiffs have conceded that no private right of action exists for defendants' alleged violation of the securities exchange rules. In light of this express concession and plaintiffs' statement that they do not dispute defendants' contention to Count VI, that Count will be dismissed preliminarily.

2. We are also mindful of the liberal standard applied to RICO complaints in this context, due to the remedial nature of the statute. *Sedima v. Imrex Co.,* 473 U.S. 479, 497–498, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985).

For the reasons stated below, we will grant defendants' motion in part and dismiss Counts II, III, IV, V and VI of the Complaint, in their entirety. Count I will be dismissed with respect to defendant Realquest only.

### A. *Count I: Plaintiffs' Section 1962(c) RICO Claims*

■ Defendants attack plaintiffs' Count I for failing to identify any defendant as a "person" within the meaning of Section 1962(c) of RICO.[3] Plaintiffs correctly counter that they have identified defendant Gruntal as a "controlling person" in paragraph 6 of the Complaint, which paragraph is incorporated into Count I at paragraph 31. Even though plaintiffs' designation of Gruntal as a "person" appears to be limited by the phrase "with respect to all brokers selling units to any of the [plaintiffs]," we will accept for purposes of this motion plaintiffs' representation that they intended to allege that Gruntal was the person perpetrating the allegedly illegal activity which is the subject of Count I. A corporation is a legal entity which satisfies the definition of "person" for purposes of a RICO Section 1962(c) claim. *Haroco Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 402 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

■ Because there is no corresponding allegation as to Realquest, however, Count I is dismissed as to defendant Realquest. *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 182 (E.D. Pa.1988) (plaintiff can proceed under RICO only against individual defendants alleged to be persons).

While Count I passes muster for having alleged that a person, *i.e.*, Gruntal, perpetrated acts violative of RICO, defendants contend that Count I is nevertheless flawed because it also alleges that defendant

Gruntal is both a person and an "enterprise[ ] within the meaning of 18 U.S.C. § 1961...." Complaint, ¶ 32.

In *Hirsch v. Enright Refining Co.*, 751 F.2d 628 (3d Cir.1984) ("Hirsch"), the Third Circuit Court of Appeals held that a single defendant cannot be both the perpetrator and the affected enterprise in a claim brought under Section 1962(c). *See also, Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir.1988) (single entity cannot be both defendant and enterprise for Section 1962(c) purposes). Subsequently, our Court of Appeals further elaborated on its holding in *Hirsch* as well as the standard for stating a claim under Section 1962(c):

> We explained in [*Hirsch v.*] *Enright* that § 1962(c) was drafted in such a way that Congress must have intended the "person" and the "enterprise" to be distinct entities under that provision.... [Section] 1962(c) was intended to govern only those instances in which an "innocent" or "passive" corporation is victimized by the RICO "persons" and either drained of its own money or used as a passive tool to extract money from third persons.

*Petrotech Inc. v. Western Co. of N.A.*, 824 F.2d 1349, 1359 (3d Cir.1987).

■ We read *Hirsch* and its progeny as standing for the proposition that a plaintiff has not adequately alleged a claim under Section 1962(c) where only one entity is identified as serving in both the perpetrator and enterprise roles. Thus, plaintiff's allegations in Count I that Gruntal was both the perpetrator and the enterprise in the questioned scheme clearly are insufficient to allege a claim under the Court's reasoning in the *Hirsch* line of cases. However, these cases involved a complaint wherein plaintiffs alleged a scheme naming only one defendant who allegedly served as both the enterprise as well as the perpetrator. Here, plaintiffs also name Realquest

---

**3.** Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

as an enterprise.[4] We do not hold, as defendants urge, that to identify one entity as serving both functions along with other entities means plaintiffs are automatically out of court. Gruntal and Realquest are distinct legal entities; therefore, it is possible that Gruntal was a perpetrator and Realquest was the enterprise in the scheme.

We are also cognizant of the United States Supreme Court's holding in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), that a plaintiff must show that alleged "racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." 109 S.Ct. at 2899 (emphasis in the original). In *Northwestern Bell,* plaintiff alleged a course of conduct by multiple defendants of bribing five members of the Minnesota Public Utilities Commission over a 6 year period. 109 S.Ct. at 2905. The Supreme Court held that a showing of frequent predicate acts over a six year period or, in the alternative, that the course of conduct, *i.e.,* bribery, was a regular way of conducting defendant's business would suffice to establish a threat of continuity. *Id.*

In the instant case, the allegations of the complaint set forth no time table during which the predicate acts are alleged to have occurred. However, it is conceivable that, given the allegations of Gruntal's association with numerous real estate developments, plaintiffs could show that Gruntal's regular way of conducting business poses a threat of continuing criminal activity.

Therefore, for all the foregoing reasons, we find that plaintiffs have stated a viable section 1962(c) claim against Gruntal.[5]

B. *Count II: Plaintiffs' Section 1962(a) Claims.*

While Section 1962(c) recognizes only an action against a defendant who, through a pattern of racketeering, participates in the affairs of an enterprise other than itself, such is not the case in an action brought under Section 1962(a).[6] Where the corporation is the direct or indirect beneficiary of the racketeering activity pattern, it can be both the "person" and the "enterprise" under either Section 1962(a) or Section 1962(b). *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393,

18 U.S.C. § 1962(c) (1984).

4. In their RICO case statement, plaintiffs identified another "enterprise" consisting of the union of several entities alleged to be associated in fact although not a legal entity. These entities are associated, if at all, for no other purpose than to defraud plaintiffs. As such, this enterprise theory fails to allege the existence of an enterprise separate and distinct from the alleged pattern of racketeering activity. *Temple University v. Salla Bros., Inc.,* 656 F.Supp. 97, 102 (E.D.Pa.1986).

5. It is also possible that plaintiff could show that Gruntal was a perpetrator with respect to some alleged racketeering activity but the passive enterprise with respect to some other, separate racketeering activities. Under the Court of Appeal's recent decision in *Rose v. Bartle,* 871 F.2d 331 (3d Cir.1989), such a scenario would also allow a Section 1962(c) claim to proceed against Gruntal. *Rose,* 871 F.2d at 359. Due to our holding above, however, we need not reach this issue at this time.

6. Section 1962(a) provides
(a) It shall be unlawful for any person who has received any income derived, directly or

indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition to any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate of one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
18 U.S.C. § 1962(a) (1984).

1396–1398 (9th Cir.1986); *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401–402 (7th Cir.1985), *Comm. of Pa. v. Derry Construction Co.*, 617 F.Supp. 940, 942–944 (W.D.Pa.1985). Therefore, defendant's contention that the Section 1962(a) claims must be dismissed for naming Gruntal as both an enterprise and a person is without merit. However, because once again Gruntal is the only entity identified as a "person", Realquest must be dismissed from Count II. *Leonard*, 687 F.Supp. at 182.

■ Another basis on which Defendants urge us to dismiss the Section 1962(a) claims is their assertion that plaintiffs lack standing to bring such claims. In particular, defendants suggest that plaintiffs' alleged harm arises from the alleged racketeering activities of Gruntal which induced plaintiffs to invest in the Woodcrest scheme, and not from any direct investment by Gruntal in Woodcrest. In fact, we note that plaintiffs allege in Count II that they were injured by Gruntal's violations of § 1962(c), and not by violations of § 1962(a). Complaint, ¶ 40.

Defendants cite two district court cases in support of their standing argument: *Leonard v. Shearson Lehman/American Express Inc.*, 687 F.Supp. 177 (E.D.Pa. 1988) and *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa. 1986). The Third Circuit Court of Appeals recently adopted the reasoning of these court decisions in *Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir.1989). In *Rose*, the Court held that a complaint alleging a violation of Section 1962(a) must contain, either on its face or by reasonable inference, allegations that the defendant's income use or investment in an enterprise caused injury to the plaintiff(s). *Rose*, 871 F.2d at 358.

We carefully have reviewed the complaint and we find no express or implied allegations that plaintiffs were injured by defendant Gruntal's investment in, or income derived from, Woodcrest, Realquest or Gruntal.[7] Likewise, plaintiffs' RICO Case Statement indicates that their only injury arises from their loss of investments and income into Woodcrest. Rico Case Statement (Docket Entry 6), ¶ 15.

Because the only alleged injury, *i.e.*, loss of investments and income, was complete upon the taking of plaintiffs' funds, we agree with defendants that plaintiffs have not alleged an injury arising from defendants' subsequent use of the proceeds from these alleged racketeering activities. Without the requisite causal link between the investment and plaintiffs' injury, the Section 1962(a) claims are insufficient as a matter of law and shall be dismissed. *Rose*, 871 F.2d at 358.

### C. *Federal Securities Claim*

In Count III of the complaint, plaintiffs allege violations of Section 10(b) of the Securities Act of 1934 arising from defendants' participation in the sale of Woodcrest units to plaintiffs and their dissemination of a Private Placement Memorandum ("PPM").[8] The complaint alleges acts of defendants leading up to the plaintiffs' purchase of the Woodcrest units, although it does not state when such purchase(s) occurred. Complaint ¶¶ 8–30. In plaintiffs' brief submitted in opposition to the pending Motion to Dismiss, plaintiffs admit that they purchased the units at issue in this lawsuit in 1985.[9] Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Memorandum") at 4.

---

**7.** Plaintiffs identify Woodcrest and "numerous real estate developments" as enterprises *in* Count II. Complaint, ¶ 37.

**8.** By way of their brief *in* opposition *to* defendants' Motion to Dismiss, plaintiffs have informed us that their reference to the 1933 Act in the Complaint was intended to refer to the Act of 1934. Memorandum of Law in Opposition to

Defendants' Motion to Dismiss the Complaint, at 1–2.

**9.** We may consider a party's admissions contained in a memorandum of law in a Rule 12(b)(6) context. *Bechtel Corp. v. Local 215, Laborors' Int'l Union*, 405 F.Supp. 370, 374 n. 1 (M.D.Pa.1975), *aff'd on other grds*, 544 F.2d 1207 (3d Cir.1976).

Defendants contend that plaintiffs' claims are untimely in light of the Third Circuit Court of Appeals' determination in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988), that the proper period of limitations for a claim under Section 10(b) (and Rule 10–5) is "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Id.* at 1550. Plaintiffs submit in their opposition to the motion to dismiss that their claims are timely under the fraudulent concealment doctrine. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). We find this opposition to be without merit on two grounds.

First, the Court in *Data Access* borrowed from the express limitations sections of the 1934 Act, *i.e.*, 15 U.S.C. §§ 77m, 78i(e), 78r(c) and 78cc(b), in determining the statute of limitations for section 10(b) claims. The doctrine of equitable tolling has been rejected with respect to at least two of these sections: *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 791–92 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (three year limitation period in 15 U.S.C. § 78i(e) is a complete bar not subject to equitable tolling);[10] *Benoay v. Decker*, 517 F.Supp. 490, 496 (E.D.Mich.1981), *aff'd w/o op.*, 735 F.2d 1363 (6th Cir.1984) (fraudulent concealment doctrine inapplicable to limitations period in 15 U.S.C. § 77m); *Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir.1978) (limitation period in § 77m runs regardless of whether plaintiff knew of the violation).

■ Likewise, we find that the three year limitation period adopted by the Third Circuit in *In re Data Systems* also operates as an absolute bar in claims brought under Section 10(b). See *Cohen v. McAllister*, 688 F.Supp. 1040, 1045 (W.D.Pa.1988) (Mencer, J.) (considerable support exists to find that fraudulent concealment doctrine does not toll limitations period in Section 10(b) cases).

■ There is a second ground for rejecting plaintiffs' fraudulent concealment argument. The complaint is devoid of allegations which would support such a theory. In their Memorandum, plaintiffs argue that they were fraudulently misled by defendants in letters received during the years 1986–88. Memorandum at 4. However, such allegations appear nowhere in the complaint, nor can they be inferred from the allegations which do appear therein. Instead, the complaint contains allegations referring solely to alleged misrepresentations made to plaintiffs by Gruntal's brokers *prior* to any purchase or by means of misrepresentations contained in the PPM, also distributed *prior* to any purchase. Complaint, ¶¶ 9–30.

■ In order to invoke the equitable doctrine of fraudulent concealment in response to a Rule 12(b)(6) motion, the complaint must contain allegations which support such a theory. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980). Absent such allegations, and in light of plaintiffs' admission that the sales in question occurred in or before 1985, the complaint fails to set forth a timely claim under Section 10(b) and, therefore, Count III will be dismissed.[11]

### D. *Claims of Common Law Fraud and Breach of Fiduciary Duty*

■ In Counts IV and V of the complaint, plaintiffs allege that defendants are guilty of common law fraud and breach of fiduciary duty to plaintiffs. Common law fraud is a tort claim governed by Pennsyl-

---

**10.** In *Walck*, the Third Circuit expressly distinguished *Holmberg*, cited by plaintiffs, in holding that the correct standard for applying equitable tolling to a limitations period is "whether tolling the limitations in a given context is consonant with the legislative scheme." *Id.* at 792 (quoting *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 557–58, 94 S.Ct. 756, 768–69, 38 L.Ed.2d 713 (1974)).

**11.** In light of our dismissal of Count III as untimely, we do not reach the issue of the sufficiency of the § 10(b) claim.

**1336**

vania's two-year statute of limitations. 42 Pa.C.S.A. § 5524(7); *A.J. Cunningham Packing v. Congress Financial Corp.*, 792 F.2d 330, 334 (3d Cir.1986) (two year limitations period applied to fraud actions accruing after February, 1983). See also, *Bhatla v. Resort Development Corp.*, 720 F.Supp. 501, 512 (W.D.Pa.1989) (Smith, J.). Likewise, breach of fiduciary duty is tortious conduct and subject to the two year limitations period, 42 Pa.C.S.A. § 5524(7); Restatement (Second) of Torts, § 874 (1979).

As we stated above, we find no allegations in the complaint concerning defendants' conduct occurring after the sale of property in 1985. This lawsuit was filed in 1989; therefore, on the face of the complaint the claims in Counts IV and V are untimely.

In theory, the statute of limitations can be tolled where a defendant has acted to prohibit the plaintiff from discovering the fraud. *E.g.*, *Schwartz v. Pierucci*, 60 B.R. 397 (Bank.E.D.Pa.1986) (statute tolled when fiduciary commits fraud on principal). However, because the complaint in the instant case contains no allegations of a fraudulent cover-up, there is no basis on which to save the untimely claims and they will be dismissed.

### E. *Conclusion*

For the foregoing reasons, Count I is dismissed with respect to defendant Realquest, and Counts II, III, IV, V and VI are dismissed with respect to both defendants.