156 Pa. Commonwealth Ct. 582 (1993)
628 A.2d 528
Nancy MAILLIE, Robert Maillie and Philip Pisani,
v.
GREATER DELAWARE VALLEY HEALTH CARE, INC., American Health Alternatives, Inc., Gordon L. Tobias, Bruce Hopper and Alfred F. Meyer.
Appeal of GREATER DELAWARE VALLEY HEALTH CARE, INC. and American Health Alternatives, Inc., Appellants.
Nancy MAILLIE, Robert Maillie and Philip Pisani,
v.
GREATER DELAWARE VALLEY HEALTH CARE, INC., American Health Alternatives, Inc., Gordon L. Tobias, Bruce Hopper and Alfred F. Meyer.
Appeal of Gordon L. TOBIAS, Bruce Hopper, and Alfred F. Meyer, Appellants.
Commonwealth Court of Pennsylvania.
Argued June 17, 1992.
Decided July 2, 1993.
*583 Raymond T. Cullen, for appellants, Greater Delaware Valley Health Care, Inc. and American Health Alternatives, Inc.
*584 Kathleen Herzog Larkin for appellants, Gordon L. Tobias, M.D., Bruce Hopper, M.D. and Alfred F. Meyer.
Ronald J. Klimas and James D. Crawford for appellees, Nancy Maillie, Robert Maillie and Philip Pisani.
Lawrence Barth, Deputy Atty. Gen., for intervenor/amicus curiae, Atty. Gen. of the Com. of Pennsylvania as Parens Patriae.
Before CRAIG, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.
CRAIG, President Judge.
Greater Delaware Valley Health Care, Inc. (GDVHC), American Health Alternatives, Inc. (AHA), Gordon L. Tobias, Bruce Hopper and Alfred F. Meyer (individual defendants who are the sole owners of AHA's stock) appeal a decision of the Court of Common Pleas of Delaware County granting judgment in favor of health care subscribers Nancy Maillie, Robert Maillie and Philip Pisani (class) for $20 million dollars plus interest, which represents the amount paid by QCC, a Blue Cross subsidiary, for the acquisition from AHA of the stock of GDVHC, a health maintenance organization (HMO) converted to a for-profit corporation.
The individual defendants originally had held the following positions at GDVHC: Tobias served as Chairman of the Board of Directors, Hopper was the Medical Director, and Meyer was the Executive Director.
Although many factual matters concerning financial values are disputed, the history of the corporate transactions, as found by the trial court, is a matter of record. In 1976, GDVHC was incorporated as a nonprofit organization providing health care services to subscribers, who consisted primarily of employees of Delaware County area employers. The employers paid premiums to GDVHC under existing contracts, with some subscribers making contributions to their respective employers.
*585 In March 1984, because of alleged failing financial stability, GDVHC sought authorization from the Insurance Department to convert from nonprofit to for-profit status, pursuant to 15 Pa.C.S. § 5961, formerly § 7951, of the Nonprofit Corporation Law of 1988.[1] The department granted the request, GDVHC filed the articles of conversion with the Department of State and the conversion became effective on May 1, 1984.
The Insurance Department published notice of GDVHC's application for conversion in the June 9, 1984, Pennsylvania Bulletin. The notice specified that interested parties should submit all comments, objections or inquiries within thirty days.
Simultaneously with the conversion, AHA, a corporation formed by, and owned entirely by, the individual defendants, purchased all of the GDVHC stock for $100,000, plus the guarantee of a $1,444,000 federal loan owed by GDVHC. The GDVHC managers divided the $100,000 among three nonprofit hospitals.
A different group of doctors (Bryn Mawr plaintiffs) commenced a separate lawsuit in December 1984. Those plaintiffs asserted ownership rights in the AHA (formerly GDVHC) stock on the theory of insufficient consideration paid by AHA at the time of conversion. That suit settled on November 26, 1986, when the trial court approved an offer of 20% of any proceeds to be thereafter received by AHA from a sale of the former GDVHC stock to a third party.
The class, anticipating the sale of the former GDVHC stock, filed a class-action complaint in equity against GDVHC, AHA and the three individual defendants on December 19, 1986. *586 The class, represented by the three named subscribers, alleged that the individual defendants used their positions at GDVHC to become unjustly enriched by (1) unlawfully converting GDVHC from nonprofit to for-profit, (2) purchasing GDVHC for insufficient consideration, and then (3) reselling GDVHC for immense profit.
On December 23, 1986, QCC purchased all of the AHA stock from the individual defendants for a total of $20 million dollars (Reproduced Record p. 378a), which included $2.8 million dollars paid by QCC directly as follows[2]the ten members of the GDVHC board of directors received $50,000 each, GDVHC employees received a total of $300,000, and a third physicians' group received $2 million dollars for agreeing not to file a lawsuit. Thus, the individual defendants maintained control of $17.2 million dollars. The $20 million dollar value of the sale of AHA stock to QCC resulted in a four million dollar settlement (20% of the proceeds) paid by the individual defendants to the Bryn Mawr plaintiffs.
On January 20, 1987, the class amended their complaint, alleging that
the purchase price paid by American Health Alternatives, Inc. is totally inadequate and that the individual defendants, Tobias, Hopper and Meyer, knowingly breached their fiduciary obligations to the non-profit corporation and to the subscribers and profitted personally by acquiring the assets of the non-profit corporation which had a much higher value then [sic] that paid.
The class further averred that the individual defendants began negotiating a sale of GDVHC stock "shortly after" the 1984 conversion. The class also petitioned for appointment of a receiver, which the trial court denied.
In January 1988, the class renewed its petition for a receiver, and the trial court held hearings in March and May on the matter. On October 5, the trial court approved the appointment of the court as a receiver, and also certified a class *587 consisting of all subscribers to GDVHC's HMO program from its inception up to the date of the sale to QCC in December 1986.
The court conducted a three-day trial on the merits in October 1990, and issued an opinion and decree nisi on May 15, 1991. In addition to the facts stated above, the trial court found that, under § 13 of the Health Maintenance Organization Act,[3] the assets of GDVHC as a nonprofit corporation were charitable assets and that the $100,000 paid by AHA to acquire GDVHC did not represent the fair market value of the stock (found to be between $4 million dollars and $10 million dollars (Finding of Fact No. 19)).
The trial court concluded that the class has standing because the subscribers' receipt of insurance benefits as a form of employee compensation gives the class a direct pecuniary and substantial interest in the litigation. William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975). The court further stated that, although the degree of causal connection is small, the granting of standing is necessary to insure judicial review which would otherwise not occur. Application of Biester, 487 Pa. 438, 409 A.2d 848 (1979).
The trial court also addressed the defense of laches, raised by the defendants on the basis that the class did not file its cause of action until the Bryn Mawr Litigation was settled, and now was attempting to receive a portion of the proceeds used in that settlement. The court rejected the defense because the class' action did not prejudice the defendants, who could have set aside adequate reserves of the proceeds.
The trial court then concluded that the defendants illegally converted the HMO from nonprofit to for-profit, on the stated *588 ground that it had failed to obtain Insurance Department approval, pursuant to 15 Pa.C.S. § 5961(b)(1)(iii),[4] or court approval, which is necessary for the diversion of property committed for charitable purposes. 15 Pa.C.S. § 5547(b).[5]
The court ultimately held that "the defendants" (without distinguishing between the three separate groups) were unjustly enriched by breaching a fiduciary duty when "they" converted and took the assets of the corporation for their personal use. The court then imposed a constructive trust upon the $20 million dollars received from the sale of stock to QCC.
The class and all defendants filed objections to the May opinion, and the trial court issued its final opinion on September 16, 1991. At that time, the court added findings (1) that "the Corporate Defendants were the alter ego of the Individual Defendants" (Finding of Fact No. 1); and (2) that "the acts of the defendants American Health Alternatives, Inc. and Tobias, Hopper and Meyer constitute actual or constructive fraud with respect to the acquisition of the shares of the converted Greater Delaware Valley Health Care, Inc." (Finding of Fact No. 15.) However, the trial court corrected a previous finding, by noting that the Insurance Department did approve the conversion.
The trial court then concluded that GDVHC was prohibited from converting under 15 Pa.C.S. § 5961(b)(1)(iii) because corporations under Insurance Department supervision are not authorized to convert under subchapter E of the Nonprofit Corporation Law of 1988. By final decree, the court confirmed its previous order of awarding $20 million dollars plus interest to the class, providing that the court is holding the funds in trust.
*589 The corporate defendants (GDVHC and AHA) and the individual defendants, all appealing respectively, have raised numerous issues, which include questions of the class' standing, statute of limitations, common pleas court jurisdiction, and trial court error in finding breach of fiduciary duty and fraud, and in awarding $20 million dollars to the class.
Since the filing of this appeal, the Commonwealth Court has made two significant rulings. On April 16, 1992, this court denied the defendants' motion to strike the amicus curiae briefs submitted by the Attorney General of Pennsylvania and by the Franklin Mint, an employer which had paid all premiums for its employees to be subscribers to the HMO. That order further stated that "the court will consider, and be informed by, only new arguments and authorities offered in such briefs, without according consideration to any new issues in such briefs not raised by the parties to the actions."
On May 19, 1992, this court addressed the Attorney General's application to intervene on the basis of a duty to safeguard charitable assets. This court denied the application because:
1. Although the HMO as a charitable and benevolent institution was exempt from taxation, there is as yet no clear basis for concluding that its assets were charitable assets of the public; rather they constituted insurance premiums paid on behalf of subscribers for insurance coverage;
2. The Attorney General has unduly delayed making application for intervention; and
3. The position of the Attorney General is not in subordination to and in recognition of the propriety of this action by the subscribers.
Because this case had its genesis on May 1, 1984, when GDVHC converted to a for-profit corporation, the logical first issue would be whether the conversion was lawful. Although the class asserts in its brief that the defendants' actions in effecting the conversion and sale of GDVHC were fraudulent (the class did not specify fraud in its complaint, which Pa. R.C.P. No. 1019(b) requires to be averred with particularity), *590 the class specifically states in its brief (p. 31) that "[t]his action was not an appeal of the Department of Insurance's decision [authorizing the conversion], but an action to prevent the inequitable gains of appellants." Therefore, this court cannot and need not analyze the legality of the conversion itself, and there is no jurisdictional issue present, as there would have been as to the jurisdiction of the common pleas court over an attack upon the conversion approvals by the Commonwealth, for which the remedy would have been an appeal to this court.
At the outset, we note that the class specifically alleges in paragraph 29 of its amended complaint, dated January 20, 1987, that the individual defendants breached their fiduciary obligations in their 1984 acquisition of the GDVHC assets when it was a nonprofit corporation. Section 5524(7) of the Judicial Code, 42 Pa.C.S. § 5524(7), provides a two-year statute of limitations for commencing proceedings based upon alleged fraud, which includes breach of a fiduciary duty, the misconduct specifically pleaded by the class. Zimmer v. Gruntal & Co., Inc., 732 F.Supp. 1330 (W.D.Pa.1989).
The class has characterized its action as one in equity, but we are mindful of the fact that it seeks relief comparable to that which it might obtain from a successful action at law. A cause of action at law predicated upon an alleged breach of fiduciary duty that culminated on May 1, 1984, the date of conversion, would had to have been filed no later than April 30, 1986.
"Although the statute of limitations is not controlling in equity, it does provide guidance in determining the reasonableness of any delay." Kay v. Kay, 460 Pa. 680, 685, 334 A.2d 585, 587 (1975). The trial court did not specifically address the affirmative defense of statute of limitations except when it rejected the defense of laches, but noted that "the plaintiffs could have acted quicker. . . ." However, because of our analysis of the standing issue below, we do not need to analyze the reasonableness of the class' delay for over two years before filing its complaint.
*591 The threshold issue is whether the class had standing to bring its cause of action. The test for standing is that a party must have a direct interest in the subject matter of the litigation, which must be substantial and immediate, rather than a remote consequence of the judgment. Wm. Penn Parking Garage.[6]
"A person who is not adversely affected in any way by the matter he seeks to challenge is not `aggrieved' thereby and has no standing to obtain a judicial resolution of this challenge." Id. at 192, 346 A.2d at 280 (footnote omitted). A party "must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as `immediate' rather than `remote.'" Id. at 202, 346 A.2d at 286.
The class contends (1) that it has a substantial interest because an improper handling of the HMO operation could leave the class without adequate health insurance, and (2) that the harm is immediate because the unjust enrichment has already occurred. The trial court held that, because the insurance benefits were a form of compensation to the subscribers, "the class has a direct and substantial interest in this matter." However, the court did not address the immediate interest aspect of the test for standing.
Although the class contends that the requirements have been satisfied, there is no evidence within the record of any injury. Class member Nancy Maillie testified by deposition as follows:
Has there been any decrease in your medical services as a result of the conversion? No. Do you know of any increase of fees which is directly resulting as a result of the conversion? No.
. . . . *592 Have you ever described, have they ever described that they're going to make a particular type of medical coverage available to you and then have they failed to provide that medical coverage? No. Have they ever described that they're going to provide you with any type of service and then failed to deliver on that type of service? No. Have they ever described that they're going to make certain doctors available to you and then fail to make those doctors available to you? No. What has been your reaction to this HMO and the service you've received? It's been favorable. And do you have any plans to change from this HMO in the near future? Not at the present time. (RR at 796a, 800a-801a.)
Class member Robert Maillie gave similar testimony in his deposition:
Have you regretted that choice [selecting GDVHC as his HMO] at any time? No. Are you satisfied with the service you're receiving from the HMO? Yes. How about your children, are you satisfied with the coverage they're receiving? Yes.
. . . .
Do you know of any medical services that the HMO was providing that they ceased to provide as a result of the conversion? No. Do you know to what extent, if any, the premiums had increased as a direct result of the conversion? No. I have no idea. No, I don't. (RR. at 803a-804a.)
There is no contrary evidence within the record to indicate that the class members have suffered any harm, let alone immediate harm. The class' contention that the individual defendants have already been unjustly enriched may or may not be a fact, but it does not represent a linking factor between the class and its health insurance coveragethe only benefit to which the class is entitled. Furthermore, there is nothing in the record that would allow this court to even begin to speculate as to what consequences, good or bad, the sale *593 will have on the class. Therefore, we must conclude that the class had no standing to bring its cause of action.
Accordingly, because the class does not have standing, we reverse the decision of the Delaware County Court of Common Pleas.

ORDER
NOW, July 2, 1993, the order of the Court of Common Pleas of Delaware County, dated September 6, 1991, at No. 85-18582, is reversed.
KELLEY, J., dissents.
NOTES
[1] Section 5961 of the Law provides, in pertinent part:

(a) General Rule.Any nonprofit corporation may, in the manner provided in this subchapter, be converted into a business corporation, hereinafter designated as the resulting corporation.
(b) Exceptions.
(1) This subchapter shall not authorize any conversion involving:
. . . .
(iii) Any corporation which by the laws of this Commonwealth is subject to the supervision of the Department of Banking, the Insurance Department or the Pennsylvania Public Utility Commission.
[2] The Stock Purchase Agreement provided for the direct payment in satisfaction of the debt between AHA and the recipients.
[3] Act of December 29, 1972, P.L. 1701, No. 364, as amended, 40 P.S. § 1563, which provides:

Every health maintenance organization established, maintained and operated by a corporation not-for-profit is hereby declared to be a charitable and benevolent institution and all its income, funds, investments and property shall be exempt from all taxation of the State or its political subdivisions.
[4] Formerly 15 Pa.C.S. § 7951.
[5] Formerly 15 Pa.C.S. § 7549, which summarily provides that property committed to charitable purposes shall not be diverted from the objects to which it was donated, granted or devised unless the governing body obtains a court order under 20 Pa.C.S. Ch. 61 (relating to estates) specifying the disposition of the property.
[6] Although the trial court emphasized that the class has a pecuniary interest in the litigation, the majority opinion in Wm. Penn Parking Garage effectively eliminated that interest as a requirement for standing because "substantial" and "pecuniary" "reflect a single concern." Id. at 197, 346 A.2d at 283.