**PENNSYLVANIA GAME COMMISSION,**
**Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**A & K RAILROAD MATERIALS,**
**INC., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 20, 1994.

Decided Dec. 6, 1994.

Reargument Denied Jan. 30, 1995.

---

William R. Pouss, Chief Counsel, for petitioners.

David A. Salapa, Asst. Counsel, for respondent.

John G. Wall, for intervenors.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

A & K Railroad Materials, Inc. (A & K) and the Pennsylvania Game Commission (Game Commission) both petitioned for review of an order of the Pennsylvania Public Utility Commission (PUC) which considered the removal of eleven railroad crossing structures, allocating the expenses related to the removals and establishing which parties were to perform the demolition and restoration at the railroad crossing sites.

This case involves portions of a former railroad line that extends through Clarion County, Pennsylvania, which was acquired by A & K in 1988 from Consolidated Rail Corporation (Conrail). Subsequent to A & K's acquisition, Conrail sought approval from the PUC to abolish the grade crossings at issue here.[1]

The case was assigned to an Administrative Law Judge (ALJ), who held hearings to determine the disposition of the crossings and the allocation of costs and expenses for removal and/or future maintenance. Each of the affected townships, Clarion County, the Pennsylvania Department of Transportation (DOT) and A & K were given notice of the scheduled hearings and were given the opportunity to participate. After the ALJ entered his initial recommended decision, exceptions were filed by Elk Township, Ashland Township, the Allegheny Valley Trail Association (AVTA), DOT and A & K. The PUC ordered a remand to address the exceptions and some issues arising under the Rails to Trails Act.[2] The PUC also directed that AVTA, the Pennsylvania Department of Environmental Resources (DER), and the Game Commission[3] be made parties.

■ The ALJ issued a recommended decision upon remand, again addressing the disposition of each crossing and the allocation of the various parties' liabilities. Exceptions were filed by the PUC's Law Bureau, DOT, Conrail and A & K. A & K also requested a rehearing, which was denied. On December 14, 1993, the PUC entered its opinion and order, which is now the subject of this Court's review.[4]

Both A & K and the Game Commission filed petitions for review, which were consolidated by order of this Court. A & K's petition concerns crossings designated as Crossing Nos. 7, 8 and 9.[5] The Game Commission's petition involves Crossing Nos. 1, 6, 7, 8, 9, 10 and 11.

### A & K's APPEAL

■ Prior to addressing the issues raised by A & K in its petition for review, we must determine whether the PUC's motion to quash A & K's appeal for lack of standing

---

1. Initially, Conrail sought approval to abolish fifteen grade crossings, proposing the removal of track and related materials for at-grade crossings and restoring the highway surface. For grade-separated crossings, Conrail proposed the abolishment of the crossing, but requested that the bridge structure remain in place. The affected parties agreed on the abolishment of four of the crossings; leaving eleven crossings the subject of this appeal.

2. Act of December 18, 1990, P.L. 748, 32 P.S. §§ 5611–5622.

3. The Game Commission requested permission to intervene because it had entered into a land purchase option agreement with A & K involving the acquisition of 192 acres of the former railroad line.

4. Our review of the PUC's decision is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, findings of fact are supported by substantial evidence, or whether the PUC has violated its rules of practice. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission*, 155 Pa.Commonwealth Ct. 537, 625 A.2d 741 (1993).

5. The PUC filed a motion to quash A & K's petition for review, arguing that A & K lacks standing. The motion was initially granted but subsequently reinstated without prejudice, allowing the standing issue to be addressed along with the merits of the appeal.

has merit. The PUC argues that A & K lacks standing to appeal because the PUC's order does not direct A & K to perform any work or bear any of the costs connected with the dismantling of the crossings. The PUC further contends that any injury suffered by A & K is a direct consequence of A & K's contract with Conrail whereby it undertook the responsibility to reimburse Conrail for any costs incurred as a result of any PUC order requiring work at the crossings.

We begin our discussion by citing Pa. R.A.P. 501, which states that "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, ... may appeal therefrom." Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702,[6] which expands the right of appeal from a decision of any administrative agency to any aggrieved person, is also pertinent to the standing issue. We have held that an aggrieved person need not be a party to the administrative adjudication, but must have a direct interest. *Lenzi v. Agricultural Land Preservation Board,* 144 Pa.Commonwealth Ct. 571, 602 A.2d 396, *petition for allowance of appeal denied,* 532 Pa. 666, 616 A.2d 986 (1992).

Here, we recognize that A & K was a party to the proceedings before the PUC and, based on that fact, A & K argues that the Public Utility Code, 66 Pa.C.S. §§ 101–3316, grants it a statutory right of appeal. Specifically, A & K cites 66 Pa.C.S. § 2704(b), which provides, in pertinent part, that "[a]ny party to the proceeding dissatisfied with the determination of the commission may appeal therefrom, as provided by law, and for this purpose is hereby autho-

rized to sue the Commonwealth." Based on this language and on Pa.R.A.P. 501, A & K believes its petition for review should not be quashed.

■ The PUC responds that although 66 Pa.C.S. § 2704(b) grants parties to a PUC proceeding the right to appeal, that right is not absolute because of the inclusion of the words in 66 Pa.C.S. § 2704(b) "as provided by law." Relying on the language in 66 Pa.C.S. §§ 2702(c)[7] and 2704(a),[8] the PUC interprets this phrase to include only the parties that are concerned parties, i.e., only those that can be ordered to perform work or bear costs. However, the PUC ignores the test for standing enunciated in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). The test requires an examination of whether the entity has a direct interest in the subject matter of the litigation, which must be substantial and immediate, rather than a remote consequence of the judgment. *Id.; See also Maillie v. Greater Delaware Valley Health Care, Inc.,* 156 Pa.Commonwealth Ct. 582, 628 A.2d 528 (1993).

'A person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of this challenge.' ... A party 'must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as "immediate" rather than "remote." '

*Id.* at 591, 628 A.2d at 532 (quoting *William Penn* ) (citation and footnote omitted).

**6.** 2 Pa.C.S. § 702 states:
Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

**7.** The pertinent language cited by the PUC in 66 Pa.C.S. § 2702(c) states that "[t]he commission may order the work of construction, relocation, alteration, protection, suspension or abolition of any crossing aforesaid to be performed in whole or in part *by any public utility or municipal corporation concerned or by the Commonwealth.*"

**8.** 66 Pa.C.S. § 2704(a) states, in pertinent part, that:
[T]he cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, *by the public utilities or municipal corporations concerned, or by the Commonwealth,* in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

A & K contends that other than its pecuniary interest it has a direct interest as the owner of the property that has been ordered removed. It argues that as the owner of the right-of-way, including the bridges, it is entitled to seek redress for what it believes is wasteful expenditures and to promote the highest and best use of the property. It also contends that, despite its contract with Conrail characterized by the PUC as an indemnification, its interest remains direct and it cannot be required to rely on Conrail or any other party to raise issues in an appeal that impact on it as directly as the PUC's order does here. We agree.

As the owner of the property, A & K has a direct interest in the outcome of the litigation. We believe that 66 Pa.C.S. § 2704 supports this determination. This section of the Public Utility Code provides a procedure for adjacent landowners to be compensated for damages to their property as a result of orders issued by the PUC. It also provides for a mechanism by which these adjacent landowners can contest the amount of damages awarded. Certainly, the legislature did not intend to provide a forum for adjacent landowners and deny this right to a property owner impacted by a PUC order.

Thus, having determined that A & K has standing, we now turn to the three issues raised in A & K's appeal. These issues are: 1) whether the PUC improperly excluded a DER letter petition that in essence excluded DER from the hearing process and whether this issue has been waived for failure to raise it in the petition for review; 2) whether the PUC adequately weighed the evidence concerning the removal of bridges no longer used for public utility purposes but which impacted other valuable public purposes; and 3) whether the PUC can order demolition work on private property without a demonstration of a public safety need.

■ With regard to the first issue listed in the previous paragraph, A & K argues that the PUC improperly excluded DER's letter petition requesting to have a witness heard at a rehearing petitioned for by A & K.

DER had initially declined to become involved in the proceedings, but later reconsidered its decision, wishing to advocate its position concerning the reuse of rail right-of-ways for trail purposes under the Rails to Trails Act. Although the PUC argues that A & K failed to raise this issue in its petition for review, we find that this question is encompassed in its objection to the denial of a rehearing and, therefore, will consider the issue not to have been waived pursuant to Pa.R.A.P. 1513(a).[9]

However, we concur with the PUC's reasoning in denying DER's request, thereby concluding that the PUC's exclusion of the letter petition was proper. The PUC stated:

First, DER received notice of the remand hearing but chose not to attend. Instead, it forwarded a letter—nearly two weeks after the hearing—stating it would not participate because it recognized no potential for Commonwealth recreational use on the railroad grade involved. Approximately three months later, DER filed another letter requesting that the testimony of Dr. Grace from another proceeding before a different ALJ be entered into this case. The ALJ correctly omitted any mention of the written testimony in his Recommended Decision Upon Remand as that testimony was submitted *after* the close of the record and cannot be considered without reopening the record now.... Nowhere in the A & K Motion or the DER supporting letter is there any suggestion of a material change of fact alleged to have occurred since conclusion of the hearing to warrant reopening this record.

(PUC's Opinion and Order, entered 12/14/93, pp. 20–21.)

■ The PUC has discretion as to whether to open a record after the case is closed and whether to grant a rehearing. *SME Bessemer Cement, Inc. v. Pennsylvania Public Utility Commission*, 116 Pa.Commonwealth Ct. 13, 540 A.2d 1006 (1988); *Merz White Way Tours v. Pennsylvania Public Utility Commission*, 204 Pa.Superior Ct. 43,

---

9. Pa.R.A.P. 1513(a) requires a petition for review to include a statement of the objections to the order under consideration. The rule provides

that "[t]he statement of objections will be deemed to include every subsidiary question fairly comprised therein."

201 A.2d 446 (1964). Because no new facts or circumstances arose that were not available at the time of the prior hearings, we do not consider the PUC's denial an abuse of discretion. DER had notice of the remand hearings and had its witness' testimony available; it could have come forward in a timely fashion.

■ Next, we address A & K's argument that the PUC did not consider the evidence as it related to other public purposes, specifically, the purposes of the Rails to Trails Act. As part of this argument, A & K contends that the PUC's findings are not supported in the record by substantial evidence.

Our review of the record reveals that the PUC did consider evidence relating to the Rails to Trails Act. The PUC's decision and order, entered December 14, 1993, stated that "as we have established that trail development is only speculative at this point, the ALJ's recommendation to remove the bridges is reasonable." This determination by the PUC is based on its review of the ALJ's recommended decision upon remand and the evidence upon which the ALJ relied. In fact, the ALJ was directed in the PUC's remand order, entered October 7, 1991, to provide opportunity to DER, the Game Commission and AVTA to participate as provided for in the Rails to Trails Act and 66 Pa.C.S. § 2702(c), and to address the following two issues:

(a) Whether it is safe and in the public interest for the abandoned railroad grade crossing to remain in place and be used for public recreational purposes, and;

(b) If the abandoned railroad grade crossing is found safe and in the public interest for recreational uses, which appropriate entity or entities should bear the cost for future repair and maintenance of the structure.

(PUC's Opinion and Order, entered 10/7/91, pp. 5–6.)

In the recommended decision upon remand the ALJ discussed the Rails to Trails Act as it applies to PUC proceedings, citing 32 P.S. § 5620. This section of the Rails to Trails Act requires the PUC to notify DER of requests to abandon crossings so that DER can evaluate the effect on proposed or existing trails. The PUC must also "consider the impact of such action upon the development, expansion and existing use of recreational trails pursuant to this act and identify and evaluate alternatives which will minimize any adverse impacts of commission actions upon the development and use of recreational trails." 32 P.S. § 5620(b).

■ The ALJ recognized his duty under the Rails to Trails Act, but also considered the mandate under the Public Utility Code to prevent accidents and promote the safety of the public. 66 Pa.C.S. § 2702. The ALJ determined that the removal of the structures would not have a significant adverse impact on trail use, because the right-of-way could be used for recreational purposes without the crossing structure, enabling the trail users to cross the roads at grade. This determination is based on testimony in the record, indicating that danger to trail users crossing at grade is not as great as the danger to individuals if they or the vehicles they are riding in fell off the structure. Testimony on the subject of trail use with or without the structures remaining in place was quite extensive. As the ultimate fact finder, the PUC's decision must be upheld if supported by substantial evidence. *AT & T Communications of Pennsylvania v. Pennsylvania Public Utility Commission*, 130 Pa.Commonwealth Ct. 595, 568 A.2d 1362 (1990). We conclude that it is.

■ We also note that the PUC found that trail development was speculative. This finding was based on the fact that although Conrail had sold its right-of-way to A & K, A & K's transfer of the right-of-way to AVTA was not evidenced in the record. Testimony concerning the respective positions of the parties concerning this transfer is in the record, but no definite evidence showing AVTA's acquisition of the railroad right-of-way for recreational purposes is in the record. Thus, the PUC's characterization, regarding trail development as speculative, was not in error.

■ A & K's last issue concerning whether the PUC can order the removal of the crossing structure without a demonstration

of a public safety need is again determined under the PUC's mandate pursuant to 66 Pa.C.S. § 2702 and the existence of substantial evidence in the record showing the public safety need. This section provides, in part, that the PUC is vested with the power:

[T]o determine and prescribe, by regulation or order, the points at which, and the manner in which, such crossing may be constructed, altered, relocated, suspended or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public.

66 Pa.C.S. § 2702(b).

■ The PUC "is not limited to any fixed rule, but may take into consideration all relevant factors, with the only requirement being that the order is just and reasonable." *Municipality of Monroeville v. Pennsylvania Public Utility Commission*, 143 Pa.Commonwealth Ct. 668, 671, 600 A.2d 655, 657 (1991).

Again a review of the PUC's order and the evidence upon which its decision was based, particularly as set forth by the ALJ, demonstrates that the PUC balanced the relevant factors. As for Crossing No. 7, the ALJ found that the structure should be removed because the pedestals adjacent to the roadway were a danger to vehicles using the roadway. The structure at Crossing No. 8 was ordered removed by the PUC, based on evidence that an at-grade crossing would provide safer access for the Game Commission's heavy trucks using the railroad right-of-way. The ALJ's findings concerning Crossing No. 9 indicated that the road curvature caused poor sight distances at the crossing and that people could fall off the bridge because no guardrails were in place on the bridge. These findings, based on substantial evidence in the record, provided for a just and reasonable order, which demonstrated the PUC's concern and consideration for public safety needs.

### GAME COMMISSION's APPEAL

■ Before turning to the issues raised by the Game Commission in its petition for review of the PUC's order, we must address the PUC's motion to quash the Game Commission's appeal. The PUC contends that although its order directs the Game Commission to reimburse the costs of Ashland Township, Elk Township, DOT and Conrail for the removal of bridges, the land purchase agreement between the Game Commission and A & K relieves the Game Commission of its duty because the agreement requires A & K to reimburse the Game Commission for any costs imposed under the PUC's order. The PUC argues that the Game Commission is not aggrieved by the order because A & K is responsible for the removal of bridges and/or reimbursement to the Game Commission for any liability imposed by the PUC's order.

This standing issue has a reverse twist as compared to the PUC's motion to quash opposing A & K's petition for review. In the A & K appeal the PUC argues that a private contract is not to be considered when examining whether a party is aggrieved, yet here the PUC argues that a private purchase agreement that prevents liability from resting on the Game Commission should be taken into account because it relieves liability. The PUC cannot have it both ways.

We rely on *Game Commission v. Department of Environmental Resources*, 521 Pa. 121, 555 A.2d 812 (1989), a case in which the Supreme Court held that the Game Commission, as an adjacent landowner, had standing in an adjudication before the Environmental Hearing Board. The court held that in addition to the mandate under 2 Pa.C.S. § 702, that allows judicial review if a person has a direct interest in an agency's action and is aggrieved thereby, "the purpose of the 'standing' requirement is to insure that a legal challenge is by a proper party." *Id.* at 128, 555 A.2d at 815. The *Game Commission* court further stated:

[W]hen the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has

implicitly ordained that such an agency is a proper party litigant, i.e., that it has 'standing.'

. . . .

[T]he Game Commission has a substantial interest in the lands and wildlife under its control. This alone would be sufficient to give it standing to legally challenge any action which allegedly would have an adverse impact on those interests.

*Id.* at 128–29, 555 A.2d at 815–16. Based on the law as stated in *Game Commission* and on our earlier discussion of the law concerning A & K's standing to appeal, we conclude that the Game Commission also has standing to appeal from the PUC's order.

Next we address the following issues raised by the Game Commission: 1) whether the PUC is empowered to allocate costs of crossing removal to a state agency that is acting as an equitable owner; 2) whether substantial evidence exists in the record to support the allocation of costs to the Game Commission and whether the PUC explains the basis for its determination; and 3) whether the PUC acted arbitrarily and capriciously in allocating costs to the Game Commission.

Although we are cognizant that a land purchase agreement exists between the Game Commission and A & K, relieving the Game Commission of any financial responsibility, we recognize that the main thrust of the Game Commission's first argument concerns its status as a Commonwealth agency and as an adjacent property owner.

■ The PUC's order allocated twenty-five per cent of the costs of removal of Crossing Nos. 1, 6, 7, 8, 9, 10 and 11 to the Game Commission pursuant to 66 Pa.C.S. §§ 2702(c) and 2704(a). *See* pertinent portions of these sections at Footnotes 7 and 8. The Game Commission contends that the use of the term "Commonwealth" in the two sections does not necessarily mean the entire Commonwealth government or all Commonwealth agencies. Citing *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985), the Game Commission argues that the term

"Commonwealth," which is not defined in the Public Utility Code, does not necessarily include all its component agencies and entities. It also quotes the *Philadelphia Housing* court for the proposition that "[a] cardinal rule of statutory construction is that we must give terms in a statute the meaning dictated by the context in which they are used." *Id.* at 586, 499 A.2d at 299. Based on this rule, the Game Commission contends that an examination of the context in which the term "Commonwealth" is used indicates that the General Assembly only intended to involve agencies responsible for highways and railroads.

In response, the PUC indicates its agreement that the meaning of terms is dictated by their context. However, when reading the pertinent sections of the Public Utility Code, specifically, 66 Pa.C.S. §§ 2702(b), 2702(c) and 2704(a), the PUC contends that the Game Commission, as an adjacent property owner and as a Commonwealth agency, is a concerned party that can be assigned costs.

The PUC relies on the interpretation of the term "Commonwealth" used in *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission,* 140 Pa.Commonwealth Ct. 270, 592 A.2d 797 (1991), *petition for allowance of appeal denied,* 531 Pa. 642, 611 A.2d 714 (1992) (*SEPTA v. PUC*). In *SEPTA v. PUC,* the court was presented with the issue whether the PUC could allocate maintenance costs to SEPTA. SEPTA argued that 66 Pa.C.S. §§ 2702 and 2704 were not applicable because SEPTA is a Commonwealth agency and not a public utility subject to PUC regulations. Although the court determined that SEPTA is a public utility and could be ordered to maintain the bridge at issue based on that status, the court also concluded that:

SEPTA would nevertheless be subject to PUC-imposed maintenance allocations because Section 2704(a) of the [Public Utility] Code clearly provides that the PUC is authorized to allocate maintenance costs to public utilities, municipal corporations, *or to the Commonwealth.* Commonwealth agencies have been and still are allocated maintenance costs in highway-railroad

crossings. See, e.g., *Commonwealth of Pennsylvania, Department of Transportation v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 525, 464 A.2d 645 (1983). SEPTA's status as a Commonwealth agency does not, therefore, relieve SEPTA from PUC ordered maintenance allocations. Because the PUC has authority to allocate maintenance costs to the Commonwealth and its agencies as well as to public utilities, SEPTA falls within the purview of the PUC's authority and is liable for maintaining the Bridge pursuant to 66 Pa.C.S. §§ 2702(b) and 2704(a).

*SEPTA v. PUC*, 140 Pa.Commonwealth Ct. at 288, 592 A.2d at 806 (emphasis in original).

The Game Commission also contends that its legal relationship to the properties containing the crossings is too tenuous to support the allocation of costs, because the Game Commission, as an adjacent landowner or as an equitable owner derives no benefits from the removal of the structures. The PUC found otherwise.

In addition to the land subject to the purchase agreement between the Game Commission and A & K, the Game Commission owns property that is located adjacent to several of the crossings. A witness from the Game Commission's Real Estate Division, Bureau of Land Management, testified that the Game Commission favored the removal of the structures at various crossings to improve access to state game lands and to minimize potential liability. Moreover, ownership of the property is not dispositive of the issue of responsibility for maintaining property, *SEPTA v. PUC*, and in this case for costs of removal of the structures. Again, we reiterate that "[i]n apportioning costs for construction, relocation and alteration of rail-highway crossings, the PUC is not limited to any fixed rule, but may take into consideration all relevant factors, with the only requirement being that the order be just and reasonable." *Id.* at 290, 592 A.2d at 807. Based on the forgoing, we conclude that the Game Commission's status as a Commonwealth agency or as an equitable owner does not relieve it of liability.

■ The Game Commission next argues that for an order to be just and reasonable

there should be evidence of a substantial benefit to justify the PUC's allocation of costs. Implicit in this argument is the question whether substantial evidence exists in the record showing that the Game Commission derives benefit as a landowner. As discussed above, the Game Commission's own witness provided testimony of benefit; clearly, the Game Commission opposed the retention of the structures because of a concern that leaving them in place would present a safety hazard to those entering game lands and their removal would provide better access. No requirement in the law provides that the evidence must substantiate a determination that one party must derive more benefit than other parties to be held liable for removal costs.

■ The PUC's order must comport with 66 Pa.C.S. § 703(e), which states, in pertinent part, that "findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence."

We have held that a [PUC] decision is adequate where, on each of the issues raised, the [PUC] was merely presented with a choice of actions, each fully developed in the record, and its choice on each issue amounted to an implicit acceptance of one party's thesis and the rejection of the other party's contention.

*Barasch v. Pennsylvania Public Utility Commission*, 101 Pa.Commonwealth Ct. 76, 84–85, 515 A.2d 651, 655 (1986).

The record in this proceeding contains the parties' positions concerning the allocation of costs for the removal of structures at the various crossings. The PUC's decision sets out the findings of fact from the ALJ's decision and the Game Commission's connection with each crossing. It then related the parties' exceptions, explaining its reasons for assigning a portion of the costs to the different parties. (*See* PUC's Decision and Order, entered 12/14/93, p. 19.) Accordingly, we conclude that the PUC's decision meets the requirements of 66 Pa.C.S. § 703(e) and allows for appropriate appellate review.

■ The Game Commission's final argument is essentially that the PUC's allocation of removal costs is arbitrary and capricious

606

because it is not based on a formula or rationale. As pointed out by the PUC, the Game Commission is not arguing that the structures should not be removed, only that the Game Commission does not wish to pay for their removal. The testimony as noted above clearly provides a basis for the conclusion that the Game Commission derives a benefit and should share the responsibility for removal of the structures. *See Department of Transportation v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 525, 464 A.2d 645 (1983). Moreover, the Game Commission does not provide reference to statutory or case law that requires a specific formula upon which allocations of costs are based. We reiterate the rule concerning the PUC's authority in apportioning costs. The PUC is not limited to any fixed rule but must only consider all relevant factors and render an order which is just and reasonable. *Monroeville.* We conclude that the PUC has complied with this mandate.

Accordingly, we affirm the order of the PUC.

### ORDER

NOW, December 6, 1994, the orders of the Pennsylvania Public Utility Commission, in the above-captioned case, are affirmed.

