

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2004

# In Re: Mushroom

Precedential or Non-Precedential: Precedential

Docket No. 02-3754

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Mushroom " (2004). *2004 Decisions.* Paper 357.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/357

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3754
_____

IN RE:
MUSHROOM TRANSPORTATION
COMPANY, INC.,
Debtor

JEOFFREY BURTCH;
MUSHROOM TRANSPORTATION
CO., INC.;
PENN YORK REALTY
COMPANY, INC.;
ROBBEY REALTY INC.;
TRUX ENTERPRISES;
TEAMSTERS PENSION TRUST
FUND OF PHILADELPHIA;
CHARLES J. SCHAFFER, JR.;
WILLIAM J. EINHORN;
RAYMOND A. HUBER;
HUBERT C. DIETRICH;
ROBERT J. EWANCO;
WILLIAM D. GROSS;
THOMAS R. JOHNSTON;
JOSEPH P. SANTONE;
WILLIAM J. DILLNER, JR.;
JAMES H. HUTCHINSON, JR.;
JOHN P. O'CONNOR;
ANTHONY R. SIMONES;
FREIGHT DRIVERS & HELPERS
LOCAL 557 PENSION FUND;
DANIEL L. SANDY

v.

JONATHAN H. GANZ;
PINCUS VERLIN HAHN
& REICH, P.C.;
PINCUS REICH HAHN
DUBROFF & GANZ, P.C.;
MODELL PINCUS HAHN
& REICH, P.C.;
PINCUS VERLIN BLUESTEIN
HAHN & REICH, P.C.;
ASTOR WEISS & NEWMAN;
RAWLE & HENDERSON;
CONTINENTAL BANK;
ERWIN L. PINCUS;
RICHARD L. HAHN;
PACE REICH; JEROME J. VERLIN;
ANDREW F. NAPOLI;
RONALD BLUESTEIN;
HERMAN P. WEINBERG;
DAVID N. BRESSLER;
ALLEN B. DUBROFF

Jeoffrey Burtch, Trustee in Bankruptcy of Mushroom Transportation Company, Inc., successor to Robbey Realty, Inc., Penn York Realty Company, Inc., and Trux Enterprises, Inc. and successor to Michael Arnold, former trustee in bankruptcy, Mushroom Transportation Company, Inc., Robbey Realty, Inc., Penn York Realty Company, Inc., and Trux Enterprises, Inc., the Teamsters Pension Trust Fund of Philadelphia and Vicinity, Charles J. Schaffer, Jr., in his official capacity as a fiduciary, by his successor in office, William J. Einhorn, Raymond A. Huber, Herbert C. Dietrich, Robert J. Ewanco, William D. Gross, Thomas R. Johnston, Joseph P.

Santone, William J. Dillner, Jr., James H. Hutchinson, Jr., John P. O'Connor and Anthony R. Simones, Trustees of the Western Pennsylvania, Teamsters and Employers Pension Fund or their successors, and Freight Drivers & Helpers Local 557 Pension Fund and Daniel L. Sandy, a fiduciary, or his successor and any other named or deemed plaintiff, substituted plaintiff (by virtue of his office) or other successor,

Appellants
(Per Clerk's Order of 2/4/03)
_____

On Appeal from the
United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 99-cv-03144)
District Judge:
Honorable Eduardo C. Robreno

_____

Argued May 27, 2004

Before: SCIRICA, *Chief Judge*,
FISHER and ALARCÓN,[*]
*Circuit Judges*.

(Filed: August 24, 2004)

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Kent Cprek (Argued)
Jennings Sigmond
510 Walnut Street, 16th Floor
The Penn Mutual Towers
Philadelphia, PA 19106-3683
*Attorney for Appellants, Mushroom Transportation Co., Inc.; Penn York Realty Co., Inc.; Robbey Realty, Inc.; Jeoffrey L. Burtch; Trux Enterprises, Inc.; Freight Drivers & Helpers Local 557 Pension Fund; and Daniel L. Sandy*

Vincent P. Szeligo
Wick, Streiff, Meyer, Metz & O'Boyle
1450 Two Chatham Center
Pittsburgh, PA 15219-3427
*Attorney for Appellants, William J. Einhorn; Raymond A. Huber; Hubert C. Dietrich; Robert J. Ewanco; William D. Gross; Thomas R. Johnston; Joseph P. Santone; William J. Dillner, Jr.; James H. Hutchinson, Jr.; John P. O'Connor; and Anthony R. Simoes*

Pace Reich (Argued)
726 Meetinghouse Road
Elkins Park, PA 19027
*Attorney for Appellees, Pincus, Verlin, Hahn & Reich, P.C.; Pincus, Reich, Hahn, Dubroff & Ganz, P.C.; Pincus, Verlin, Bluestein, Hahn & Reich, P.C.; and Pace Reich*

2

Andrew F. Napoli
Hochberg, Napoli & Diamond
1608 Walnut Street, 14th Floor
Philadelphia, PA 19103
    *Attorney for Appellees, Pincus,*
    *Verlin, Hahn & Reich, P.C.; and*
    *Andrew F. Napoli*


Edward I. Swichar (Argued)
Blank Rome
One Logan Square
Philadelphia, PA 19103
    *Attorney for Appellee,*
    *Continental Bank*


Laura S. Clare
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
    *Attorney for Appellee*
    *Edwin L. Pincus*


Richard L. Hahn
321 Clairemont Road
Villanova, PA 19085
    *Attorney for Appellee,*
    *Richard L. Hahn*


Arthur W. Lefco (Argued)
Marshall, Dennehey, Warner,
Coleman & Goggin
1845 Walnut Street, 16th Floor
Philadelphia, PA 19103
    *Attorney for Appellee,*
    *Jerome J. Verlin*

Ernest J. Bernabei, III (Argued)
Harvey, Pennington, Cabot,
Griffith & Renneisen
1835 Market Street
Eleven Penn Center, 29th Floor
Philadelphia, PA 19103
    *Attorney for Appellee,*
    *Herman P. Weinberg*


Allen B. Dubroff
Jaffe, Friedman, Schuman,
Nemeroff, Applebaum & McCaffery
7848 Old York Road, Suite 200
Elkins Park, PA 19027
    *Attorney for Appellee,*
    *Allen B. Dubroff*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This appeal requires us to consider a bankruptcy debtor-in-possession's ability to invoke the discovery rule to toll the statutes of limitations on the debtor's claims arising out of its lawyer's embezzlement of estate funds. The bankruptcy and district courts here found that despite the lawyer's embezzlement and non-disclosure of such embezzlement to his client, the debtor, the debtor could not, as a matter of law, establish that it acted with reasonable diligence in ferreting out the embezzlement that formed the basis of its causes of action.

Because we believe that the decisions below establish a policy that fosters lawyers' abuse of their fiduciary relationships with their clients, and fail adequately to protect the justifiable reliance of clients on their lawyers' probity and trustworthiness, we will reverse and remand for further proceedings concerning the applicability of the discovery rule to the debtor's claims against its lawyer's law firm and the law firm's individual shareholders. We will affirm the grant of summary judgment in Continental Bank's favor, however, on the alternative ground that Pennsylvania's Uniform Fiduciaries Act, which immunizes banks from liability arising out of good faith transfers of funds, shields Continental from liability because it transferred the eventually embezzled funds in good faith to an authorized recipient, the debtor's lawyer. We will also affirm the grant of summary judgment in favor of Continental and the debtor's law firm on the breach of fiduciary duty claims under ERISA.

## I. Background

The claims in this appeal arise out of the embezzlement of funds belonging to the bankruptcy estates of Mushroom Transportation Company, Inc. ("MTC") and related debtor companies, Robbey Realty, Inc., Penn York Realty Company, Inc., Trux Enterprises, Inc. and Leazit, Inc. (collectively "Mushroom") by Jonathan Ganz, legal counsel to the bankruptcy estates. Mushroom, through its trustee, and various pension plans and their administrators (the "Pension Plan Plaintiffs") (together with the trustee,

"Appellants"), instituted claims in two adversary proceedings against Continental Bank,[1] Pincus, Verlin, Hahn & Reich, P.C. ("PVHR")[2] (the law firm with which Ganz was a partner), and various of PVHR's individual shareholder lawyers (collectively "Defendants" and "Appellees"), seeking to hold them liable for the consequences of Ganz's embezzlement.

MTC and its related subsidiaries and entities filed petitions under Chapter 11 of the Bankruptcy Code on June 24, 1985. The bankruptcy court ordered that the petitions of the related entities be jointly administered. By virtue of the Chapter 11 petitions, Mushroom became the debtor-in-possession, and remained such until December 1990, when the bankruptcy was converted to a Chapter 7 proceeding. The events relevant to this appeal occurred during the Chapter 11

---

[1]PNC Bank, N.A., Continental's successor, advocates Continental's position in this appeal. Because the events in question occurred prior to the succession, we will refer to the bank defendant as Continental throughout this opinion.

[2]Mushroom also brought suit against a number of additional law firms who are successors of PVHR. Because the identities of these additional firms are immaterial to our resolution of this appeal, we will refer only to PVHR as the law firm defendant.

bankruptcy, prior to the Chapter 7 conversion.

Mushroom retained the services of PVHR, through Ganz, to provide legal representation during the course of the bankruptcy proceedings. Within six months of the filing of the Chapter 11 petitions, Mushroom ceased operations and began to liquidate assets. On February 27, 1986, the bankruptcy court appointed Michael C. Arnold, MTC's executive vice president, "Special Liquidation Consultant" to assist in the liquidation, and Mushroom proceeded under his leadership to liquidate a significant portion of assets.

Mushroom allocated a large percentage of the liquidation proceeds to satisfying a substantial debt owed to Continental, a secured creditor who held a perfected security interest in all of Mushroom's assets. On June 16, 1986, following repayment of some of the debt to Continental, the bankruptcy court, with the consent of the parties, authorized the opening of an escrow account at Continental to hold the balance of proceeds generated from the sale of Mushroom's assets not yet paid to Continental.

In a letter to Ganz dated February 12, 1987, Arnold informed Ganz that he (Arnold) and Robert B. Cutaiar, MTC's president, were handling the day-to-day operations of the debtors. The letter requested an accounting of the proceeds of one of Mushroom's realty sales and a report of Mushroom's assets held by Continental, and informed Ganz that

Arnold anticipated a "further reduction" in his (Arnold's) involvement in the bankruptcy proceedings by March of 1987. Ganz responded to Arnold's letter by correspondence dated February 17, 1987, which stated that Continental held approximately $986,000 "in various escrow accounts," and that PVHR held additional funds for the final real estate settlements in "escrow accounts."

In June 1987, Continental and PVHR, as counsel to Mushroom, entered into a bankruptcy court-approved payment stipulation (the "Stipulation"), which Ganz signed on behalf of PVHR as "Counsel to Debtors." The Stipulation provided for the repayment of the balance of the debt owed to Continental from the funds held in the escrow account at Continental. Once Mushroom satisfied its debt to Continental, the Stipulation required Continental to turn over any remaining funds in the escrow account to PVHR, "to be held in escrow for the benefit of the Debtor's estate.... " In September 1987, at Ganz's urging, the bankruptcy court excused Mushroom from the statutory requirement to file monthly operating statements.

Pursuant to the Stipulation, and following satisfaction of the debt owed to it, Continental issued a $200,000 treasurer's check dated July 21, 1987, payable to Ganz, "Council [sic] for Debtor in Possession." On August 3, 1987, Continental deposited the remaining $766,624.49 balance into an escrow account at Continental that had been opened by Ganz under the name of MTC,

5

with Jonathan Ganz, c/o PVHR, as escrow agent for Mushroom.

Between August 3, 1987 and April 26, 1988, Ganz misappropriated more than one-half million dollars of the transferred funds. In the interim, Arnold had contacted Ganz on several occasions inquiring about the transferred funds. In late 1987 or early 1988, Arnold requested from Ganz an accounting of the Mushroom estate's assets. Ganz responded by sending Arnold a copy of the Stipulation in a February 2, 1988, correspondence. Arnold replied on February 19, 1988, writing that Ganz's response – merely sending a copy of the Stipulation – "[did] not clear up the problem of how much is being held and by whom." Arnold's correspondence also set forth his estimates of the assets remaining based on Mushroom's records and other numbers, and asked Ganz to confirm the numbers.

There appears to have been some oral communication between Arnold and Ganz following the February 19, 1988, correspondence in which Ganz assured Arnold "that the assets were invested in passbook certificates of deposit at various banks... ." Ganz testified that in this communication, he told Arnold that "there were funds in an approximate amount – I wouldn't recall the exact number – and they were in CDs and we were holding them. I was holding them." It is undisputed that Arnold failed to request written confirmation of, or otherwise attempt to verify, Ganz's representations about the amount and location of the funds.

In January 1992, the bankruptcy court approved the substantive consolidation of MTC and its related entities, at which time Arnold was prepared to distribute the proceeds from the sale of Mushroom's assets. Arnold called Ganz to request that Ganz start liquidating the certificates of deposit and escrow accounts he had said were held on behalf of Mushroom by PVHR, but received no response. At the end of February 1992, the United States Trustee advised Arnold that Ganz was reportedly involved in the defalcation of other bankruptcy estates he had served as legal counsel. Acting upon this information, Arnold subsequently learned that Ganz had absconded with the Mushroom funds under Ganz's control.

## II. The Adversary Actions

On October 5, 1992, Arnold, by now the trustee (hereinafter the "Trustee")[3] following Mushroom's conversion to Chapter 7 bankruptcy, filed adversary action no. 92-1043 (the "First Adversary Action") on behalf of Mushroom against Ganz and PVHR. Arnold later moved to amend his complaint to add Continental as a defendant; the bankruptcy court granted the motion, but refused to relate the amendment back to the date of the original

---

[3]Arnold resigned as trustee on January 23, 1995, and was replaced by the current trustee, Jeoffrey Burtch, on March 15, 1995.

complaint. The bankruptcy court also denied Arnold's motion to add PVHR's individual shareholders as defendants, and refused to allow the Pension Plan Plaintiffs to join the action as plaintiffs.[4] Arnold, joined by the Pension Plan Plaintiffs who had been prohibited from joining as plaintiffs in the First Adversary Action, filed a second adversary action, no. 94-0003 (the "Second Adversary Action"), on January 3, 1994.

Together, the virtually identical complaints in the two adversary actions advanced eight claims against Ganz, PVHR, PVHR's individual shareholders, and Continental, seven[5] of which are the subject of this appeal: Count I (by the Trustee against PVHR and Ganz, seeking turnover of estate property); Count II (by the Trustee against PVHR, alleging breach of fiduciary duty as escrow agent); Counts III and V (by the Trustee against Continental, alleging breach of fiduciary duty for releasing property to Ganz, and wrongful conversion of estate property); Count VI (by the Trustee against PVHR and Continental, alleging breach of contract for violating the Stipulation); Count VII (by the Trustee against PVHR's individual shareholders, alleging negligent failure to ensure preservation of client

assets); and Count VIII (by the Trustee and Pension Plan Plaintiffs against PVHR and Continental, alleging breach of fiduciary duty under § 1109(a) of ERISA as custodians of plan assets).

Defendants moved for summary judgment on all counts in both adversary actions. Defendants argued that all of the claims were barred by the applicable statutes of limitations and laches, and Continental and PVHR argued that the ERISA claim was legally insufficient because neither was a fiduciary within the meaning of the relevant ERISA provision, 29 U.S.C. § 1109(a).

In separate opinions dated August 24, 1998 and October 1, 1999, the bankruptcy court granted summary judgment in favor of all Defendants. The bankruptcy court found that the applicable statutes of limitations and laches principles under Pennsylvania law barred the Trustee's turnover and common law claims, and that Mushroom had failed to exercise reasonable diligence in uncovering these claims so as to toll the statutes of limitations and preclude laches. Moreover, the bankruptcy court concluded, neither Continental nor PVHR were fiduciaries susceptible to suit under ERISA.

On appeal, the district court affirmed on essentially the same bases relied upon by the bankruptcy court.

---

[4]Arnold filed the amended complaint in the First Adversary Action on May 27, 1994.

[5]Count IV, raising a conversion claim against Ganz only, is not at issue in this appeal.

### III. Appellate Jurisdiction

Continental suggests that we lack appellate jurisdiction over the district court's disposition of Appellants' appeal in the Second Adversary Action because Appellants failed to specify in their notice the district court's order supposedly disposing of the Second Adversary Action. There is no question that Appellants' notice of appeal does not unmistakably indicate an intention to appeal from both of the district court's orders affirming the bankruptcy court's disposition of the two adversary actions. The notice specifies only the district court's order dated September 4, 2002, and entered by the clerk on September 5, 2002, which affirmed the bankruptcy court's August 1998 order; the notice fails to specify the district court's order dated September 4, 2002, and entered by the clerk on September 6, 2002, which affirmed the bankruptcy court's October 1999 order.

"When an appeal is taken from a specified judgment only or from a part of a specified judgment, the court of appeals acquires thereby no jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal." Lusardi v. Xerox Corp., 975 F.2d 964, 972 (3d Cir. 1992) (quoting Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir. 1977)). But we may exercise appellate jurisdiction over an order not specified in a notice of appeal where "there is a connection between the specified and unspecified order, the

intention to appeal the unspecified order is apparent and the opposing party is not prejudiced and has a full opportunity to brief the issues." Id. (citation omitted). In determining whether a notice encompasses an unspecified order, we follow a "policy of liberal construction of notices of appeal ... where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 n. 1 (3d Cir. 2001) (citations omitted).

Despite the notice's failure to specify the order entered September 6, we will exercise appellate jurisdiction over both orders for several reasons. First, the caption of the notice references the bankruptcy court docket numbers for both adversary actions, reflecting an intent to appeal the district court's disposition of the bankruptcy court's rulings in both actions. Moreover, the body of the notice identifies all plaintiffs and defendants in both of the adversary actions as Appellants and Appellees, respectively. Because the claims in both adversary actions are virtually identical, and were disposed of by the district court based on the same reasoning, Appellees cannot contend that they are prejudiced by having to address an appeal concerning the district court's order entered September 6.

Guided by our "liberal policy" in construing notices of appeal, we conclude that the notice of appeal adequately communicates Appellants' intent to appeal the district court's order entered September 6, and find no prejudice to

Appellees from an exercise of our jurisdiction over that order. We will therefore exercise appellate jurisdiction over both of the district court's orders entered in this matter.

## IV. Standards of Review

We apply plenary review to a district court's grant of summary judgment and assess the record using the same standards for summary judgment employed by the district court. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000) (citation omitted). Summary judgment is appropriate where the moving party can demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We must view the evidence in the light most favorable to the non-movant, "draw[ing] all reasonable inferences in favor of the non-moving party." Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 265 (3d Cir. 2004) (citation omitted).

## V. Discussion

A. What law supplies the statutes of limitations applicable to the common law claims?

As a preliminary matter, the Trustee submits that because the estate's claims arise out of the wrongful transfer and subsequent embezzlement of a bankruptcy estate's escrowed funds, they are governed by a federal common law of bankruptcy. The bankruptcy court noted that whether or not the Trustee's claims were state or federal in nature was unimportant because even if the claims were federal, state law would supply the applicable statutes of limitations pursuant to the Supreme Court's directive that "when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 355 (1991) (citations omitted). This borrowing principle applies equally to federal common law actions. Oneida County, N.Y. v. Oneida Indian Nation of New York State, 470 U.S. 226, 240 (1985). Along with state statutes of limitations, a borrowing court "must also borrow from state law the relevant tolling principles." Island Insteel Systems, Inc. v. Waters, 296 F.3d 200, 210 n. 4 (3d Cir. 2002) (citations omitted).

The Court in Oneida Indian Nation pointed out that borrowing would be impermissible where the borrowed state limitations period interfered with federal policies. Oneida Indian Nation, 470 U.S. at 240. See also Island Insteel Systems, Inc., 296 F.3d at 207 ("if borrowing an analogous statute of limitations from state law would 'frustrate or interfere with the implementation of national policies,' courts must look to federal law for an analogous limitations period") (citations omitted). The Trustee directs us to no authority suggesting that application of state statutes of limitations to the common law claims here – common law claims asserted post-bankruptcy petition and based on post-petition wrongdoing –

9

frustrates any national policy in effecting the administration and reorganization of a bankruptcy estate. To the contrary, the Bankruptcy Code itself imposes a two-year limitations period on post-petition claims seeking to avoid post-petition transfers of property of the bankruptcy estate. See 11 U.S.C. § 549(d). Thus, the suggestion that imposing state-law limitations periods of two or more years on common law claims asserted post-petition, and based on post-petition misconduct, interferes with federal bankruptcy principles – where the Bankruptcy Code itself imposes a two-year limitations period on certain post-petition claims based on post-petition misconduct – is simply without merit. We therefore agree with the bankruptcy and district courts that state law, specifically Pennsylvania law,[6] supplies the statutes of limitations applicable to the Trustee's common law claims.

B.    The applicable statutes of limitations and laches principles

Having determined that the bankruptcy and district courts correctly chose to apply (or borrow) Pennsylvania's

_____

[6]Given that Pennsylvania is the forum state, and has the most extensive contacts with the litigants and the facts at issue in this litigation, it is the proper source of the applicable statutes of limitations and laches principles. Gluck v. Unisys Corp., 960 F.2d 1168, 1179-80 (3d Cir. 1992) (applying general rule that statute of limitations should be borrowed from forum state).

statutes of limitations, we must assess the accuracy of those which they applied. In short, the bankruptcy and district courts correctly held that various two-year statutes of limitations governed Counts II and III (breach of fiduciary duty), V (wrongful conversion) and VII (negligence) in each adversary proceeding, and that a four-year statute of limitations period governed Count VI (breach of contract).[7]    Maillie v. Greater Delaware

_____

[7]The bankruptcy and district courts also correctly concluded that the ERISA breach of fiduciary duty claim in Count VIII was subject to the six-year statute of limitations set forth in 29 U.S.C. § 1113(1). Neither court found that the statute had run on this claim. There is no question that the statute of limitations had not yet expired as to the ERISA claim against PVHR, as it was set forth in the original complaint filed in 1992. It is not so clear, however, whether the statute of limitations had run on the ERISA claim against Continental, which was first advanced in the amended complaint filed on May 27, 1994. Since the bankruptcy court refused to relate the claims against Continental back to the date of the original complaint, there is an argument that the six-year limitations period applicable to the ERISA claim had expired by the date of the filing of the amended complaint. Because we agree with the bankruptcy and district courts that neither PVHR nor Continental are fiduciaries subject to suit under 29 U.S.C. § 1109, we need not resolve whether the statute of limitations

10

Valley Health Care, Inc., 628 A.2d 528, 532 (Pa. Commw. 1993) (breach of fiduciary duty); Bednar v. Marino, 646 A.2d 573, 578 (Pa. Super. 1994) (conversion); 42 Pa.C.S.A. § 5524(2) (citation omitted) (negligence); 42 Pa.C.S.A. § 5525(a) (breach of contract).

The bankruptcy and district courts also correctly determined the laches principles governing the turnover claim. The turnover claim set forth in Count I arises under 11 U.S.C. §§ 542 and 543.[8]

The Bankruptcy Code does not impose a statute of limitations on turnover claims arising under these provisions. In re Midway Airlines, Inc., 221 B.R. 411, 458 (Bankr. N.D. Ill. 1998) ("Bankruptcy Code does not contain a statute of limitations for turnover actions pursuant to § 542"); In re Bookout Holsteins, Inc., 100 B.R. 427, 432 (Bankr. N.D. Ind. 1989) (same); In re De Berry, 59 B.R. 891, 898 (Bankr. E.D.N.Y. 1986) (same). Because turnover claims are equitable in nature, see Walker v. Weese, 286 B.R. 294, 299 (D. Md. 2002) (turnover claim "fairly characterized as an equitable claim"); In re Warmus, 252 B.R. 584, 587 (Bankr. S.D. Fla. 2000) (turnover claims, "firmly rooted in protecting and preserving property of the [estate], ... are clearly and uniquely equitable claims under the Bankruptcy Code") (citations omitted); In re Kabler, 230 B.R. 525, 526 (Bankr. E.D.N.C. 1999) ("Turnover is an equitable remedy"), they are subject to laches. Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 186 n. 3 (3d Cir. 1997) ("An action brought in equity is governed by the doctrine of laches.") (citing Russell v. Todd, 309 U.S. 280, 287 (1940)). See also Erkins v. Bryan, 785 F.2d 1538, 1543 (11th Cir. 1986) ("Policies underlying the creation of federal equitable claims are not

---

bars Appellants' ERISA claim against Continental.

[8]11 U.S.C. § 542(a) provides that:

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 543(b)(1) provides that:

(b)     A custodian shall–

(1)     deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents,

---

or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case[.]

well served by applying rigid limitations; therefore, federal courts considering federal equitable claims should rely on equitable principles.") (citing Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946)).

"The party asserting laches as a defensive bar must establish (1) an inexcusable delay in bringing the action and (2) prejudice." United States Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 208 (3d Cir. 1999) (citations omitted). "To establish prejudice, the party raising laches must demonstrate that the delay caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of what one would have otherwise kept does not establish prejudice." Id. (citation omitted). While statutes of limitations do not directly apply to equitable claims such as the turnover claim, a limitations period on an analogous claim for legal relief is highly relevant to a laches analysis. As we said in E.E.O.C. v. Great Atlantic & Pacific Tea Co., 735 F.2d 69 (3d Cir. 1984), "[i]f a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice. In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice." 735 F.2d at 80 (citations omitted).

The bankruptcy and district courts concluded that the claim at law analogous to the Trustee's turnover claim arises under 11 U.S.C. § 549(a), which creates a cause of action in a trustee to avoid an unauthorized post-petition transfer of estate property. Section 549(a) claims are subject to § 549(d), which provides that § 549(a) claims "may not be commenced after the earlier of – (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." 11 U.S.C. § 549(d). The Trustee's turnover claim targets a post-petition transfer of funds by Continental to Ganz. Section 549(a) expressly creates a cause of action by which to seek avoidance of post-petition transfers, a cause of action clearly analogous to the turnover claim here. Consequently, Great Atlantic & Pacific Tea Co. dictates that we consult the statute of limitations applicable to a § 549(a) claim – the two-year period set forth in § 549(d) – in determining whether to shift to the Trustee the burden of proving excusable delay and the absence of prejudice.

C.    Did Mushroom fail as a matter of law to exercise reasonable diligence in uncovering Ganz's embezzlement?

The bankruptcy and district courts correctly found that, absent application of tolling principles, the common law tort and contract claims accrued no later than August of 1987, when Continental completed the transfer of funds to Ganz per the Stipulation. The bankruptcy and district courts further concluded correctly that the limitations period on the claim at law analogous to the turnover claim – relevant to a laches analysis under Great Atlantic & Pacific Tea Co. – began to run no later than April 26, 1988, the date on

which Ganz completed his embezzlement of the transferred funds.

The Trustee's primary argument[9] against the application of the statutes of limitations and laches is that the discovery rule and/or equitable tolling suspended the running of the statutes of limitations (and thereby precluded the onset of laches) until

---

[9]The Trustee also contends that Continental and PVHR were trustees of an express trust (the escrow bank account), and that since causes of action against such trustees do not accrue until the trust is "repudiated," the limitations periods should not have begun to run until November-December 1992, when Arnold first made a demand on Ganz for tender of estate property in the escrow account. The district court correctly rejected this contention. Pennsylvania law makes clear that the key element in a trust is that the trustee possesses legal title to property. Schellentrager v. Tradesmens Nat'l Bank & Trust Co., 88 A.2d 773, 774 (Pa. 1952). None of the relevant documents (including the Stipulation) reflects any intent to convey title in Mushroom's funds to Continental or PVHR. Rather, the Stipulation rendered Continental and PVHR escrow agents who, under Pennsylvania law, did not acquire legal title to Mushroom's funds. Paul v. Kennedy, 102 A.2d 158, 159 (Pa. 1954) (under escrow arrangement, legal title remains in a depositor until a condition precedent is satisfied) (citations omitted). Accordingly, this argument is without merit.

January-February 1992, when Arnold and Mushroom first discovered Ganz's defalcation of the funds. The bankruptcy and district courts held that, as a matter of law, Mushroom (through Arnold and Cutaiar) failed to exercise due diligence in superintending Ganz's oversight of the funds, and therefore could not invoke either the discovery rule or equitable tolling to preserve its claims against all Defendants. For the reasons that follow, we find that there are genuine issues of material fact concerning Mushroom's reasonable diligence for the fact-finder to determine.

Under Pennsylvania's discovery rule, the statute of limitations will not begin to run until "the plaintiff reasonably knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." In re TMI Litig., 89 F.3d 1106, 1116 (3d Cir. 1996) (quoting Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. 1984)) (internal quotation marks omitted). The discovery rule will only toll the statute of limitations where the plaintiff shows that he or she has exercised "'reasonable diligence' in ascertaining the existence of the injury and its cause." Bohus v. Bellof, 950 F.2d 919, 925 (3d Cir. 1991).

Similarly, equitable tolling will suspend the running of the statute of limitations "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her

rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (citations omitted). Like the discovery rule, equitable tolling requires the plaintiff to demonstrate "that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." Id. at 1390 (citation omitted).

In assessing the finding that Mushroom failed as a matter of law to exercise reasonable diligence for purposes of the discovery rule and equitable tolling, we are guided by the general rule that such determinations are typically within the jury's province unless "the facts are so clear that reasonable minds cannot differ ... ." Melley v. Pioneer Bank, N.A., 834 A.2d 1191, 1201 (Pa. Super. 2003) (citation omitted). During the time of Ganz's defalcations, Mushroom was in Chapter 11 bankruptcy, and was therefore a debtor-in-possession. See 11 U.S.C. § 1101(1). As we recently pointed out, "[i]n Chapter 11 cases where no trustee is appointed, [11 U.S.C.] § 1107(a) provides that the debtor-in-possession, *i.e.*, the debtor's management, enjoys the powers that would otherwise vest in the bankruptcy trustee. Along with those powers, of course, comes the trustee's fiduciary duty to maximize the value of the bankruptcy estate." Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) (*en banc*). The debtor-in-possession's fiduciary duty to maximize includes the "'duty to protect and conserve property in its possession for the benefit of creditors.'" In re Marvel Entertainment Grp., Inc., 140 F.3d 463, 474 (3d Cir. 1998) (citation omitted). Thus, there is no question that Mushroom, acting through its representatives Arnold and Cutaiar, had a fiduciary duty to protect and maximize the estate's assets.

This duty formed the foundation for the bankruptcy and district courts' reasonable diligence analysis. Indeed, the bankruptcy and district courts essentially equated the fiduciary duty to safeguard assets with the duty of reasonable diligence and, finding a breach of the former, therefore found a breach of the latter. Moreover, the courts held, Mushroom could not escape the statutory fiduciary duty to protect and maximize by delegating such duty to legal counsel, where the delegation amounted to an abdication of that duty. The district court explained its distinction between permissible delegation and impermissible abdication:

> Although delegation of duties is one thing, abdication of responsibility is quite another. In this case, the debtors not only "delegated" to Ganz the duty to collect the funds generated from the sale of assets, deposit them into the escrow account pursuant to an order of the court, and transfer the funds to the law firm account to be maintained pending further order of the Bankruptcy Court, but rather they surrendered totally their

14

obligation to oversee the liquidation of the estate or to supervise, even in the most relaxed fashion, the activities of a retained professional. The Bankruptcy Code commands the debtor in possession (or the trustee) to be the captain of the debtor ship. See 11 U.S.C. § 1108. While the debtor in possession may assign to others specific duties, it may not surrender the helm and let the debtor ship sail under someone else's captaincy.

Burtch v. Ganz (In re Mushroom Transp. Co., Inc.), 282 B.R. 805, 825 (E.D. Pa. 2002) (footnote omitted). Because Mushroom abdicated its statutory duty to preserve the estate's assets, the bankruptcy and district courts held, it could not possibly demonstrate reasonable diligence for purposes of the discovery rule. Id.

In Burtch v. Security Pacific Bank Oregon (In re Mushroom Transp. Co., Inc.), 247 B.R. 395 (E.D. Pa. 2000), a related case involving the same facts respecting Ganz's embezzlement and Mushroom's oversight, Judge Reed of the District Court for the Eastern District of Pennsylvania reached a conclusion on reasonable diligence and the statute of limitations directly contrary to the one reached by the bankruptcy and district courts here. There, the Trustee filed various claims against one of the banks that had allegedly received some of the funds embezzled by Ganz. The district court found that summary judgment in the bank's favor on the issue of reasonable diligence and the statute of limitations was inappropriate for several reasons. First, the court noted, delegation of debtor duties – including those performed, or intended to be performed, by Ganz here – is perfectly appropriate under, and indeed encouraged by, the Bankruptcy Code. Accordingly, "a reasonable debtor in possession would, in certain circumstances, entrust the care of liquid assets to a court-appointed lawyer." Id. at 403 (citation omitted). Therefore, "there is no legal basis to conclude that the delegation of core trustee duties to court-appointed counsel for the estate by a debtor in possession is *per se* sufficient to show that the debtors in possession failed to exercise due diligence." Id.

The district court then reviewed the record and found that "in light of the fact that reliance on counsel is inherent in the bankruptcy code, ... the bankruptcy court invaded the province of the fact finder by depreciating the evidence that could persuade a trier of fact that a reasonable person in the circumstances of the Mushroom debtors in possession would have relied on counsel and consequently failed to discover the thefts by Ganz until a later date." Id. at 404. Several aspects of the record led the court to this conclusion. First, the distribution of estate assets was not an issue from early 1986 through August 1988 (when Ganz had completed his embezzlement) because the bankruptcy proceedings were focused on

15

motions to consolidate. Rather, Arnold and Cutaiar devoted their energies to priority claims, which, according to Arnold, were the source of major uncertainty concerning Mushroom's financial condition. Second, Arnold's inquiries to Ganz in February 1988 could have led a reasonable trier of fact to conclude that Arnold's efforts went beyond abdication of the debtor's duty to preserve the estate's assets and in fact constituted reasonable diligence for purposes of the discovery rule. Finally, the bankruptcy court's two orders in June and September 1987 provided Ganz with nearly exclusive control over Mushroom's assets and removed any mechanism by which the court could monitor use of those funds. In the district court's, a reasonable fact-finder could find that a reasonably diligent person in these circumstances would have acted precisely as Mushroom and its Trustee did here.

We find much of Judge Reed's analysis persuasive. First, the Bankruptcy Code contemplates and encourages the retention of professionals by debtors to facilitate a Chapter 11 reorganization. Section 327 states that "the trustee [and, therefore, the debtor in possession], with the court's approval, may employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The Code also provides for the compensation of such attorneys. 11 U.S.C. § 329. These provisions reflect Congress's desire "to encourage trustees to delegate their duties where such delegation would lower costs

of administration." <u>Boldt v. United States Trustee (In re Jenkins)</u>, 130 F.3d 1335, 1340 (9th Cir. 1997) (citations and internal quotation marks omitted). A fact-finder could thus conclude that Mushroom's decision to entrust its lawyer, Ganz, with the task of safeguarding its assets was within the bounds of reasonableness.

Still further, the bankruptcy court had issued two orders in June and September of 1987 entrusting Mushroom's assets to Ganz. The June 1987 order approved the Stipulation pursuant to which Mushroom's assets were to be turned over to Ganz to hold in escrow. In Arnold's view, the June 1987 order prompted him to believe that Mushroom's assets were being "invested in accordance with the special rules applicable to bankruptcy." The September 1987 order granted Ganz's motion to excuse Mushroom from filing operating reports otherwise required by the Bankruptcy Code. In Arnold's view, the September 1987 order gave him "no reason to expect that the absence of such reporting indicated that a lawyer had absconded with escrow funds... ." Just as they in fact appeared to lead Arnold to believe that the assets were safe and there was no need to monitor them closely, these orders could have led a reasonable person to believe that there was no need to monitor them on his or her own.

In addition to these aspects of Judge Reed's analysis, and perhaps most importantly, we find highly relevant the fact that the genesis of this action is Ganz's abuse of his fiduciary, lawyer-client relationship with Mushroom, an

abuse which very well could have caused Mushroom to relax its vigilance in overseeing the execution of the duties it delegated to Ganz. Neither Judge Robreno nor Judge Reed expressly mentioned the principle manifesting itself in decisions from courts in this circuit (and numerous other state and federal courts) that where the wrongdoing underlying causes of action has been perpetrated by a fiduciary to the detriment of its principal, this fact militates strongly against summary judgment on the issue of whether the principal (here Mushroom) exercised reasonable diligence in failing to discover the fiduciary's malfeasance within the applicable statutes of limitations.

Many judges in this Circuit have recognized the impact of a fiduciary relationship, and abuse of that relationship by the fiduciary, on a discovery rule analysis. In Schwartz v. Pierucci, 60 B.R. 397 (E.D. Pa. 1986), the trustee asserted claims against a bank in an effort to recover funds improperly drawn by principals and officers of the debtor from the debtor's account at the bank. The district court denied the bank's motion for summary judgment, rejecting its contention that the statute of limitations barred certain of the claims against it. Specifically, the court found that the officers' wrongful conduct tolled the applicable limitations period, reasoning that:

> Where a fiduciary commits an act of fraud against his principal, the statute of limitations will be tolled, since the very position the fiduciary

is in prohibits the principal from uncovering the fraud. Furthermore, the fiduciary, because of his position of trust, would have an affirmative duty to the principal to disclose the fraud. Absent a disclosure, the fiduciary commits an act of continual covering up of the fraud.

Id. at 403. The court noted that letters sent by counsel for the creditors to the trustee urging the trustee to investigate matters pertaining to the purloined funds might have imposed a duty to inquire upon the trustee, but "whether or not the letters imposed a duty upon the trustee to investigate is a question of fact, which must be resolved by a trier of fact." Id.

The District Court for the Eastern District of Pennsylvania subsequently addressed Schwartz in Gurfein v. Sovereign Group, 826 F. Supp. 890 (E.D. Pa. 1993). Plaintiffs, investors and partners in real estate limited partnerships, brought fraud, breach of fiduciary duty and related claims against some of their general partners and related entities. In response to defendants' statute of limitations defense, plaintiffs argued that because defendants were plaintiffs' fiduciaries, plaintiffs' causes of action did not accrue until they acquired actual knowledge of their injury. The district court found that we had not yet "recognized an exception to the discovery rule in the fiduciary-defendant context." Id. at 918. Nonetheless, he acknowledged that "[t]he existence of a fiduciary relationship is relevant to the question of

17

when a cause of action accrued. Because of a fiduciary's unique position of trust, the presence of a fiduciary relationship would be pertinent to the question of when a plaintiff's duty to investigate arose." Id. at 919 n. 31 (citing, inter alia, Schwartz).

The Eastern District recognized the relevance of a fiduciary relationship to a discovery rule/reasonable diligence analysis in Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel, 832 F. Supp. 922 (E.D. Pa. 1993). The plaintiff law firm sued one of its partners who had misappropriated client funds. The defendant asserted a limitations defense to plaintiff's breach of fiduciary duty claim. The district court held that the discovery rule preserved the breach of fiduciary duty claim largely because of the fiduciary relationship existing between the firm and its partners. The court concluded that:

> Given Defendant's position as a fiduciary of the firm, and the complexity of the real estate transactions which gave rise to the Real Estate Accounts, the Court concludes that Plaintiff did exercise due diligence in its oversight of Defendant's management of the accounts. ... First as an employee, and later as a partner, [Defendant] sought and was accorded in return the trust of [the firm's] partners. Ironically, *it is this type of very special relationship that enables a wayward fiduciary to engage in acts of concealment that "cause the [principal] to relax vigilance or deviate from the right of inquiry."*

> *To require a principal to engage in aggressive oversight of its fiduciary's conduct is to deny the very essence of a fiduciary relationship.*

Id. at 935 (citation omitted and first two alterations and emphasis supplied) .[10]

---

[10] The Eastern District is by no means alone in subscribing to this view: numerous courts have enunciated a similar approach. See, e.g., Rieff v. Evans, 630 N.W.2d 278, 290 (Iowa 2001) (statute tolled where plaintiff proves that "a confidential or fiduciary relationship exists between the person concealing the cause of action and the aggrieved party, combined with proof that defendant breached the duty of disclosure") (citation and internal quotation marks omitted); Ray v. Queen, 747 A.2d 1137, 1142 (D.C. 2000) ("In determining whether the plaintiff exercised reasonable diligence, the courts should consider, *inter alia*, whether there was a fiduciary relationship between the parties.") (citation omitted); Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988) ("The client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved.") (citation omitted); Hobbs v. Bateman Eichler, 210 Cal. Rptr. 387, 404 (Cal. Ct. App. 1985) ("Where a fiduciary relationship exists, facts which ordinarily require investigation may not incite suspicion ... and do not give rise to a duty of inquiry....") (citations omitted). Other

We should stress that we do *not* hold here that the existence of a fiduciary, lawyer-client relationship between Ganz and Mushroom, and Ganz's abuse of that relationship, alone preclude judgment as a matter of law in PVHR's and its shareholders' favor.[11]  But as the district court noted in Gurfein, "the presence of a fiduciary relationship would be pertinent to the question of when a plaintiff's duty to investigate arose."  826 F. Supp. at 919 n. 31 (citation omitted).  Ganz was no stranger to Mushroom and Arnold – he was Mushroom's lawyer, bound by professional rules of ethics to the highest duties of honesty and probity in his dealings with his client.  As the cases discussed above illustrate, the existence of a fiduciary relationship is relevant to a discovery rule analysis precisely because it entails such a presumptive level of trust in the fiduciary by the principal that it may take a "smoking gun" to excite searching

inquiry on the principal's part into its fiduciary's behavior.

Here, Mushroom, through Arnold, questioned Ganz directly concerning the whereabouts of the transferred funds.  Arnold's letter to Ganz set forth estimates of Mushroom's assets based on Mushroom's records and other numbers.  According to Arnold, Ganz responded to Ganz's letter "that the assets were invested in passbook certificates of deposit at various banks... ."  Ganz himself testified that he told Arnold that there was a certain amount of assets under his supervision, though he could not recall the exact number he conveyed to Arnold.

We do not suggest that Arnold's inquiries should serve as a model of vigilance for similarly situated debtors-in-possession.  However, we believe that the facts here – particularly the Bankruptcy Code's encouragement that debtors-in-possession retain lawyers and other professionals to assist in their reorganization, and the existence of a lawyer-client relationship which Ganz employed to conceal his defalcations at his client's (and its creditors') expense – create genuine factual issues for the fact-finder concerning whether Arnold and Mushroom exercised reasonable diligence in uncovering Ganz's embezzlement.[12]

courts have gone even further in holding that where there is a fiduciary relationship, only the actual discovery of the wrongdoing starts the running of the limitations period.  See, e.g., Community Title Co. v. U.S. Title Guaranty Co., Inc., 965 S.W.2d 245, 252 (Mo. Ct. App. 1998) (citations omitted).

[11]At the same time, however, we would not foreclose the possibility that in some instances, the nature of a fiduciary relationship might be such that the relationship alone would be sufficient to trigger application of the discovery rule.

[12]The bankruptcy and district courts found that laches barred the Trustee's turnover claim solely because the statute of limitations on the analogous claim at law under 11 U.S.C. § 549(a) had expired,

We therefore, with the exception of Continental,[13] will reverse the grant of summary judgment in Appellees' favor on the non-ERISA claims and remand with instructions to the district court to remand the non-ERISA claims to the bankruptcy court for further proceedings consistent with this opinion.

D.    Is Continental entitled to summary judgment on the alternative ground that Pennsylvania's Uniform Fiduciaries Act shields it from liability?

While PVHR and its shareholders have advanced no arguments in support of affirmance beyond the statutes of

creating a presumption of inexcusable delay and prejudice that the Trustee presumably did not rebut. Because we find here that the applicable statutes of limitations have not expired as a matter of law, we necessarily reverse the bankruptcy and district courts' conclusion that the presumption of inexcusable delay and prejudice had arisen as to Appellees' laches defense, and remand as to laches as well.

[13]Because we conclude in the following section that summary judgment in Continental's favor should be affirmed on the alternative basis of the Pennsylvania Uniform Fiduciaries Act's immunity provision, we decline to decide whether the bankruptcy and district courts properly granted summary judgment in Continental's favor on the basis of the statutes of limitations.

limitations and laches, Continental has asserted numerous alternative grounds supporting affirmance. Of course, we may affirm the district court on grounds different from those relied on by the district court. Kabakjian v. United States, 267 F.3d 208, 213 (3d Cir. 2001) (citation omitted). And we will affirm summary judgment in Continental's favor because Pennsylvania's Uniform Fiduciaries Act ("UFA") immunizes Continental from any liability flowing from its transfer of funds to Ganz.

Continental bases its argument on § 6361 of the UFA, which provides that:

> A person who, in good faith, pays or transfers to a fiduciary any money or other property, which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary, and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

7 P.S. § 6361.  A payment or transfer of money "is done 'in good faith,' within the meaning of this act, when it is in fact done honestly, whether it be done negligently or not." Id. § 6351(2).

In the leading case on § 6361, the Supreme Court of Pennsylvania held that a bank in virtually the same position as Continental could not be liable on a breach of contract theory.  See Robinson Protective Alarm Co. v. Bolger & Picker,

20

516 A.2d 299 (Pa. 1986). There, a law firm opened an escrow account in its name on behalf of its client, Robinson Protective Alarm. Three partners of the law firm executed the signature card for the account. One of these partners eventually embezzled hundreds of thousands of dollars from the account. After compensating Robinson for the embezzled funds, the law firm brought an action for indemnity or contribution against the bank.

The Court of Common Pleas of Philadelphia County and the Pennsylvania Superior Court both held that the bank, by not obtaining endorsements prior to redeeming certificates relating to the account, had violated the redemption provisions set forth on the certificates, and had thereby committed a breach of contract. The Pennsylvania Supreme Court reversed, finding that § 6361 shielded the bank from liability because it disbursed funds from the account to the embezzling lawyer in good faith. The court began its analysis by distinguishing "good faith" in this context from "bad faith":

> Even a failure to inquire under suspicious circumstances will not negate "good faith," unless the failure to do so is due to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a vice or defect in the transaction. Conversely, if a bank has knowledge that a fiduciary intends to appropriate trust funds to his own use, and that to release funds to him will aid a breach of trust, then the bank will be held to have acted in "bad faith."

Id. at 304 (citations omitted).

Applying this view, the court noted that the embezzling lawyer was a fiduciary as to the escrow funds in question, and was empowered to receive them from the bank. After setting forth the purpose of § 6361 – "to facilitate banking transactions by relieving a depositary of the responsibility of seeing that an authorized fiduciary will use entrusted funds for proper purposes" – the court concluded that "[t]o apply a theory which would hold a payor liable for a minuscule and irrelevant departure from the prescribed procedure, where he has acted honestly in releasing money to a known authorized fiduciary, without knowledge of the latter's intent to subsequently embezzle those funds, would clearly not contribute to the smooth flow of commerce sought to be achieved by the UFA." Id. "Indeed," the court continued, "in the absence of contrary knowledge on the depositary's part, it [the bank] is entitled, if not bound, to presume that a fiduciary will properly apply funds released to him." Id. at 304-05 (citations omitted).

Here, the Trustee has not directed us to any evidence in the record demonstrating that Continental acted in bad faith in transferring the funds to Ganz, nor could we locate any on our own. The Trustee does suggest, however, that Continental is not entitled to the UFA's immunity because only PVHR itself, not

21

Ganz, was authorized to receive the transferred funds. Section 6361 requires that the transfer at issue be made to a fiduciary who "as such is authorized to receive" the transfer before one can be immunized from liability for making the transfer. Continental naturally contends that "Ganz was a fiduciary authorized to receive the funds at issue[,]" pointing to admissions in the complaints that "at the time of the transfer of the funds, Ganz was a member of PVHR and acted as legal representative of Mushroom." Moreover, Continental continues, "it is undisputed that Ganz was the only signatory on behalf of PVHR on the Stipulation and signed as counsel of record for Mushroom."

The Stipulation required that the escrow funds be turned over "to Debtor's counsel, Pincus, Verlin, Hahn & Reich, P.C., to be held in escrow for the benefit of the Debtor's estate...." The issue for us is whether this fact – that the Stipulation required Continental to turn the escrow funds over to PVHR, and not Ganz specifically – precludes affirmance on this alternative basis because it creates a genuine issue of material fact concerning the applicability of § 6361.

We conclude that the undisputed facts of record demonstrate as a matter of law that Ganz was authorized to receive the funds within the meaning of § 6361 because, as an agent of PVHR, he had at least apparent authority to do so.[14]

_____

[14]Indeed, a strong case could be made that Ganz had actual authority to

"Pennsylvania courts define apparent authority as that authority which, although not actually granted, the principal knowingly permits the agent to exercise, or holds him out as possessing." D & G Equip. Co., Inc. v. First Nat'l Bank of Greencastle, 764 F.2d 950, 954 (3d Cir. 1985) (citing, inter alia, Revere Press, Inc. v. Blumberg, 246 A.2d 407, 410 (Pa. 1968)). "Apparent authority can exist only to the extent that it is reasonable for the third party dealing with the agent to believe the agent is authorized." Id. at 954 (citation omitted). "The test for determining whether an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.'" Universal Computer Systems, Inc. v. Medical Svcs. Ass'n of Pa., 628 F.2d 820, 823 (3d Cir. 1980) (citation omitted).

We find that the actions of PVHR – holding Ganz out as one of the firm's

_____

receive the funds on PVHR's behalf. See Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 602 A.2d 1348, 1351-52 (Pa. Super. 1992) (noting that acts of agent can bind principal upon showing of "express authority directly granted by the principal to bind the principal as to certain matters [ ] or implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority") (citation omitted).

bankruptcy lawyers and permitting him to handle Mushroom's bankruptcy – would have led an ordinarily prudent bank in Continental's position to "have a right to believe and [ ] actually believe that [Ganz] possessed the authority" to receive the transferred funds on PVHR's behalf. Ganz himself signed the Stipulation on behalf of PVHR, giving Continental even more reason to believe that Ganz had apparent authority to receive funds pursuant to the Stipulation. Thus, by transferring the funds to Ganz, Continental transferred the funds to one authorized to receive them within the meaning of § 6361.

The final issue is the scope of immunity the UFA confers on Continental. There is no question that Continental's allegedly wrongful transfer of funds to Ganz forms the basis of the Trustee's non-ERISA claims against it. In Robinson Protective Alarm, the Pennsylvania Supreme Court stated that "[t]here is nothing on the face of [§ 6361], or in any other provision of the UFA, that would restrict the immunity from liability to suits based on negligence – or preclude its applicability merely because a claim for recovery rests on a contract theory." 516 A.2d at 304. Following this dictate, Pennsylvania courts have applied § 6361 to all manner of common law claims, including, pertinently, breach of contract, breach of fiduciary duty, and conversion claims. See id. (breach of contract); Jones v. Van Norman, 522 A.2d 503 (Pa. 1987) (conversion); Harris v. Police & Fire Fed. Credit Union, No. Civ. A. 98-5175, 1999

WL 96006, at *2 n. 7 (E.D. Pa. Feb. 24, 1999) (breach of contract, breach of fiduciary duty and negligence). Accordingly, we will affirm the grant of summary judgment in Continental's favor on all of the Trustee's non-ERISA claims[15] against it.

E.    Are Continental and PVHR fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i) so as to be susceptible to Appellants' breach of fiduciary duty claim under 29 U.S.C. § 1109(a)?

Appellants' breach of fiduciary duty claim arises under 29 U.S.C. § 1109(a) of ERISA, which creates liability for "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter[.]" 29 U.S.C. § 1109(a). A person is a fiduciary of an ERISA plan to the extent that such person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets... ." 29 U.S.C. § 1002(21)(A)(i).

The district court found that neither Continental nor PVHR were fiduciaries within the meaning of § 1002(21)(A)(i), and therefore that § 1109(a) did not apply to them. We concur. In Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin

[15]The Trustee did not assert its turnover claim against Continental.

23

Assocs., Inc., 237 F.3d 270 (3d Cir. 2001), we made clear that one need not have discretion in exercising authority or control over the management or disposition of plan assets in order to qualify as a fiduciary under § 1002(21)(A)(i). 237 F.3d at 274. Nonetheless, although we reversed the district court's grant of the defendant-bank's motion to dismiss because the complaint had alleged the bank's "day to day responsibility to control, manage, hold, safeguard, and account for the Fund's assets and income[,]" id. at 275 (internal quotation marks omitted), we stated that we were "inclined to agree that ERISA does *not* consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund can draw checks." Id. (emphasis supplied).

Neither the allegations nor the evidence here suggest that Continental did anything more than serve as the holder of assets placed there pursuant to the Stipulation. Our dictum in Wettlin Assocs., and the views of many of our sister circuits, see Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 20 (1st Cir. 1998) ("mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value) are insufficient to ground a claim of fiduciary status") (citations omitted); Southern Council of Indus. Workers v. Ford, 83 F.3d 966, 968 (8th Cir. 1996) (lawyer "did not become a plan fiduciary merely by ... related control over the settlement proceeds") (citation omitted),

lead us to conclude that Continental was not a fiduciary within the meaning of § 1002(21)(A)(i). We therefore will affirm the grant of summary judgment in Continental's favor on Appellants' breach of fiduciary duty claim under ERISA.

We have not yet addressed whether a law firm in PVHR's position here constitutes a § 1002(21)(A)(i) fiduciary. Appellants have not alleged, nor does the evidence establish, that PVHR had any legal right or discretion to dispose of Mushroom's escrowed funds. Indeed, Appellants' amended complaint made clear that the escrowed funds were to be paid to the trustee on demand. The Stipulation provides that PVHR's role with respect to the alleged "plan assets" (the escrowed funds) was to hold them in escrow for the benefit of the Mushroom estate.

We agree with the bankruptcy and district courts that in its role as holder of Mushroom's escrowed funds, PVHR simply was not a fiduciary within the meaning of § 1002(21)(A)(i). As noted above, many of our sister circuits have held that mere custody or possession over plan assets, without more, does not render one a fiduciary. Beddall, 137 F.3d at 20; Southern Council of Indus. Workers, 83 F.3d at 968-69. Moreover, imposing ERISA fiduciary duties to the Pension Plan Plaintiffs where PVHR already had clearly defined fiduciary duties under Pennsylvania law to both the debtor and all

24

of the debtor's creditors[16] would place PVHR in a potentially conflicted position. Southern Council of Indus. Workers, 83 F.3d at 969 (recognizing potential "irreconcilable obligations" if ERISA fiduciary duties to plan imposed on insurance company with fiduciary duties to its shareholders and clients) (citation omitted); Chapman v. Klemick, 3 F.3d 1508, 1511 (11th Cir. 1993) (recognizing potential conflict between ERISA fiduciary duties imposed on bank and bank's fiduciary duties to shareholders and customers). This potential conflict further militates against finding PVHR to be a fiduciary under ERISA. Accordingly, we also will affirm the grant of summary judgment in PVHR's favor as to

---

[16]As escrow agent and legal counsel to Mushroom, PVHR had fiduciary duties under Pennsylvania law to the entire Mushroom estate, including the estate's creditors. Knoll v. Butler, 675 A.2d 1308, 1312 (Pa. Commw. 1996) ("An ordinary escrow agreement creates a fiduciary relationship between the agent [the depository institution] and the transferor."); Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1283 (Pa. 1992) ("Our common law imposes on attorneys the status of fiduciaries *vis a vis* their clients[.]"). Further, the Bankruptcy Code forbids counsel to the estate from holding any interest adverse to the estate. See 11 U.S.C. § 327(a). Continental also had fiduciary duties to the estate as an escrow agent, so the potential conflict rationale applies equally to it.

Appellants' breach of fiduciary duty claim under ERISA.

## VI. Conclusion

For the foregoing reasons, we will reverse the grant of summary judgment in favor of all Appellees except Continental on the non-ERISA counts, and remand with instructions to the district court to remand the non-ERISA counts to the bankruptcy court for further proceedings consistent with this opinion; we will affirm the grant of summary judgment in Continental's favor on the non-ERISA common law counts on the alternative ground that the UFA immunizes Continental from those counts; and we will affirm the grant of summary judgment in favor of Continental and PVHR on Appellants' breach of fiduciary duty claims under ERISA.

_____