**In re Estate of Hernandez**

C.P. of Berks County, nos. 0608-0658, 80402.

*Stephen G. Welz,* for petitioner.
*Joseph L. Haines, John J. Speicher,* and *William R. Blumer,* for respondent.

SCHMEHL, *P.W., J.,* September 1, 2010—Georgette L. Hernandez (decedent) died testate on June 26, 2007. The decedent was survived by a daughter, Georgette L. Veeder (respondent), a son, Robert L. Hernandez (petitioner), and petitioner's daughters (collectively the granddaughters), one of whom was a minor at the time of the decedent's death. By the terms of the decedent's will, the respondent and petitioner are to share the decedent's personalty as equally as practical. The residue of the decedent's estate is to be shared equally by the granddaughters. Additionally, the decedent established a trust providing for the transfer of real estate to respondent, who, by operation of law, also received a number of bank accounts in which the decedent had an interest. There has been no challenge to the validity of the decedent's will or trust.

Legal proceedings began on May 13, 2008 when petitioner filed a petition for citation to compel agent to file account before this court as well as a petition for citation to produce will and compel probate before the register of wills. The petition to compel account requested the issuance of a citation upon the respondent to show cause why she should not file a formal account of her activities as agent for the decedent pursuant to a durable power of attorney executed on or after February 8, 1996. The respondent filed an answer pro se and, by the time of the first status conference in this matter, had acquired counsel. Respondent was ordered on September 23, 2008 to "file a formal account of all of her activities as agent of the decedent," and on October 23, 2008 the respondent timely complied.

With regard to the petition to compel probate, the original will was filed of record on June 3, 2008; how-

ever, the named executrix, a friend of the decedent, was not willing to serve and the named alternate could not be found. Ultimately, on July 7, 2008, by order of the register of wills, which order was implemented by the granting of letters on March 20, 2009, Attorney David Sobotka was appointed as administrator c.t.a.

On November 18, 2008, petitioner filed a petition for contempt against the respondent alleging that the respondent's account as agent was a barely legible photocopy of a handwritten list of expenses that failed to comply with Orphans' Court Rule 6.1. He complained that the account does not constitute a formal account and that it is worthless as a source of reliable information, totally and consciously disregarding the letter and spirit of the court's order. The respondent filed a timely answer and a status conference was scheduled. In the interim, counsel for petitioner began on a course of discovery which included, ultimately, deposing respondent and her husband and subpoenaing documents from several banking institutions.

Also on November 18, 2008, simultaneously with the petition for contempt, respondent filed a petition for protective order enjoining the transfer, alienation or encumbrance of real estate, by which the petitioner sought to enjoin the respondent from encumbering or disposing of the real estate that she received from the decedent's revocable trust. Petitioner averred that the trust document was never produced and therefore held the belief that it had been revoked, thereby causing the real estate at issue to be an asset of the decedent's estate. He argued that without a protective order the estate remained at risk of not receiving the asset. Following an answer to the petition and a status conference thereon,

the court entered an order enjoining the respondent from transferring, alienating or encumbering the real estate that the respondent received by way of the trust.

Several months later, on June 30, 2009, the respondent filed a petition to vacate the injunction. Following an answer and briefs, the court, on November 4, 2009, vacated its order of February 2, 2009 enjoining the respondent from encumbering or disposing of the real estate.[1] The court does not here give greater detail regarding the issue of the real estate and the proceedings thereon because it is not a matter raised by the petitioner or any other person in interest in the concise statement of errors complained of on appeal filed August 3, 2010.

Following a lengthy and contentious course of discovery, motions and petitions regarding the real estate, and a series of continuances and status conferences, the court scheduled a trial on all outstanding issues for June 9 and 10, 2010.[2]

After trial in the matter was scheduled, apparently realizing there was no formal foundation for a trial on the merits of the matter as opposed to a petition for contempt on the form of respondent's account, the petitioner caused objections to account of agent to be filed

---

1. The court notes that the administrator, c.t.a. opposed the petition to vacate and joined in the Petitioner's brief in opposition.

2. It would appear that one of the outstanding issues at the time of scheduling trial was a motion to reconsider the court's vacating the protective order regarding the real estate. To the extent that the motion was not previously denied orally or in some lost written order, the same should be denied for the failure of the parties to raise the issue at the trial; consequently, an order to that effect is being entered contemporaneously with the filing of this opinion.

on May 17, 2010, together with a motion for summary judgment. The objections to account renewed the petitioner's position that the account does not constitute a formal account and does not comply with the rules of Orphans' Court. The petitioner also objected to the account's consisting of a list of expenses paid from a single checking account while failing to include information regarding 58 other accounts in which the decedent had an interest. He believed that respondent managed these accounts and that at least some portion of these accounts should be considered assets of the decedent's estate.

The petitioner's motion for summary judgment alleged that the respondent managed a number of the decedent's accounts by opening and closing accounts, changing accounts from sole to joint ownership, and changing the beneficial interest of "in trust for" accounts, all in such a way to benefit herself or her husband. Additionally, she transferred substantial sums from these accounts to herself, despite the funds' having been contributed to these accounts by the decedent. The discovery of these transactions led the petitioner to accuse the respondent of filing a false and fraudulent account. Petitioner believes that the unequivocal evidence of record indicates that the respondent misappropriated the decedent's funds, thereby frustrating her testamentary intent. The motion also indicated that respondent had no objective or documentary evidence to support her claim that the decedent wished her to have these funds and that she is barred by the Dead Man's Rule from testifying to any conversations allegedly held with the decedent (a problematic position given the petitioner's deposing the respondent and calling her as a witness as if on cross-examination at trial).

In his brief, the petitioner frames the issues as being: (1) whether an agent is liable for gifts made absent express authority in the power of attorney and which are otherwise inconsistent with prudent estate planning or contrary to the decedent's testamentary intent; (2) can the agent/donee testify to statements allegedly made by the decedent absent prima facie evidence of donative intent; and (3) is the agent excused from compliance with ordinary fiduciary duty simply because a transfer is made from an account jointly held by the agent.

Petitioner argues that the decedent's power of attorney does not specifically grant the respondent power to make gifts and, even if it did, the agent is responsible if a gift is inconsistent with prudent estate planning or financial management for the principal. He argues that the respondent knew of the decedent's testamentary plan and that the gifts she made to herself constituted an abuse of authority.

Turning to the issue of the respondent's competency to testify, the petitioner argues that before an agent can testify to an alleged gift made to the agent by the decedent, there must be a showing that the decedent, not the fiduciary, made the gift. The donee must make a prima facie showing of donative intent and delivery. Petitioner argues that because the decedent did not write a single check from the joint checking account in question, delivery by the decedent has not been established. Furthermore, petitioner argues that respondent was in a confidential relationship with the decedent, meaning that the burden shifted to the respondent to show that any alleged gift was free of any taint or undue influence or deception. Petitioner therefore believes and argues that the respon-

dent bore the burden to show that the inter vivos gifts were valid and, absent independent evidence establishing a prima facie gift, the respondent was unable to testify as to any statement by the decedent.

Finally, petitioner argues that respondent is liable even if she did not act in her capacity as agent because the mere existence of a joint account does not presume donative intent on the part of one party and because funds deposited by the decedent were the decedent's during her lifetime and not the property of the respondent.

On May 18, 2010, the estate administrator joined in the petitioner's motion for summary judgment and brief in opposition [sic]. On June 7, 2010, the respondent timely filed a reply to the petitioner's motion for summary judgment and cross-motion for partial summary judgment as well as a brief-of-law. In the cross-motion for partial summary judgment the respondent notes that even prior to the decedent's execution of the power of attorney, the decedent and respondent held several joint bank accounts and that after the execution of the power of attorney the decedent, not the respondent, modified several solely owned accounts, making them joint with the respondent. The signature cards for the accounts were attached as exhibits to support these averments. Additionally, some of the accounts which petitioner seeks to have turned over to the estate were trust accounts that, according to the multiple-party account act, belonged to the trustee, the respondent herein, during her lifetime and would have become property of the beneficiary, the decedent herein, only upon the trustee's death. Additionally, prior to the execution of the power of attorney in 2004, the respondent owed the decedent no fiduciary

duty and any withdrawals made by the respondent were done as joint owner and not as agent. Respondent further argues that any claims arising from actions taken prior to May 13, 2006 are time barred by the two-year statute of limitations set forth in 42 Pa.C.S. §5524 and that any claims made as a result of the respondent's withdrawal from joint accounts after the decedent's death are barred by the Multiple-Party Account Act's presumption that upon the death of a party to a joint account the sum remaining on deposit belongs to the surviving party and not the decedent's estate. The respondent asks that the court find that she did not breach her fiduciary duty and that, further, petitioner's claims should be barred in accordance with the above arguments.

In her brief, the respondent notes that depositing assets into a joint account does not make an irrevocable gift, but the conversion by a sole owner of a bank account into a joint account as evidenced by a duly signed signature card is prima facie evidence of an inter vivos gift. In this case, a number of accounts were made joint with the respondent by the decedent prior to the execution of the power of attorney, a time when the respondent had no legal authority to engage in banking transactions on behalf of the decedent. Equally important, a number of the accounts were altered after the execution of the power of attorney by the decedent herself as evidenced by the signature cards. The respondent also notes that the respondent signed those cards in her individual capacity and not as agent for the decedent. These were no transactions performed by the respondent as agent with regard to these accounts; therefore, they were not subject to the court's order for an accounting.

On the argument of the Dead Man's Rule, the respondent argues that the rule is waived when a party deposes the witness sought to be found incompetent, which the petitioner has done. Furthermore, the petitioner's argument that the respondent may not testify unless she first introduces competent independent evidence that the decedent made the gift is defeated by the respondent's production of the signature cards executed by the decedent. Additionally, the argument by petitioner that the respondent enjoyed a confidential relationship is without merit given his attempt to apply this claim to transactions made prior to the power of attorney. Furthermore, the transfers and transactions by the respondent were at all times consistent with a long-standing pattern that began prior to the execution of the power of attorney and with the decedent's blessing; hence, they are not tainted. The respondent further notes that the decedent was active, alert and very much in control of her finances when this process began and that there is no evidence or even an allegation that the decedent lacked capacity, suffered from a weakened intellect, or was otherwise unable to manage her affairs or detect and object to the transactions that the petitioner finds objectionable.

In addition to the respondent's arguments that the petitioner cannot claim a breach of fiduciary duty prior to such duty being created by the power of attorney, the petitioner's claims are also barred in part by the statute of limitations. If indeed the respondent had breached her duty to the decedent, the injured party would have been the decedent, not the petitioner, and as such she would have had to initiate action within two years of the breach. No such action was filed by the decedent at any time. Furthermore, the limitations period does not begin to run

again upon the decedent's death so as to allow the estate to do what the decedent chose not to do during her lifetime. Because the petitioner began this action on May 13, 2008, any claim arising from transactions prior to May 13, 2006 should be barred.

The respondent also notes that the petitioner complains that the respondent liquidated various accounts the decedent held in trust for the granddaughters; however, under the Multi-Party Account Act, these accounts were the decedent's and not the granddaughters' during the decedent's lifetime. Given the respondent's authority under the power of attorney to engage in banking transactions, she was absolutely entitled to close decedent's accounts held in trust for the granddaughters and deposit them into the decedent's other accounts. The granddaughters simply had no right to the funds within those "in trust for" accounts until the decedent's death, by which time they had been closed. Similarly, the respondent had complete authority to withdraw monies from accounts that she and her husband held in trust for the decedent given that they were their accounts in which the decedent had no interest until the respondent and her husband passed. With regard to the joint bank accounts, the sums on deposit became the property of the respondent by operation of law upon the decedent's death. The decedent's signature on the signature cards is prima facie evidence of her intent to make an inter vivos gift to the respondent, and the funds remaining on deposit upon the death of one party become the property of the surviving party unless there is clear and convincing evidence of a different intent at the time the account is created. Additionally, the respondent argues that the existence of a confidential relationship between the owners of a joint

account does not alone shift the burden of proof to the survivor to demonstrate gift. This is such a case, given no evidence or even allegation of undue influence or lack of capacity. There is simply no evidence that the decedent did not voluntarily create the joint accounts; therefore, the sums remaining on deposit at the decedent's death belong to the respondent free and clear of any claims by the petitioner or the estate.

Although the court was inclined to grant the respondent's motion for partial summary judgment and to deny the petitioner's motion for summary judgment on the morning of trial and so informed the parties in hopes that they might settle the matter, the court, after being informed that settlement would not occur, chose to reserve judgment on the motions and take testimony. Prior to the commencement of the trial, the respondent, through counsel, for the first time raised the issue of the petitioner's standing in the matter, given his entitlement under the will to personal property only. Petitioner's counsel attempted to argue that the petitioner was a stand-in for his daughters, one of whom was a minor up until shortly before the trial, but neither of whom was present. Counsel, indicating he had such authority, also offered to enter his appearance for the granddaughters. In a supporting effort to cure the standing defect, the estate's administrator also offered his consent for petitioner's counsel to enter his appearance on behalf of the administrator. With reluctance, the court chose to proceed with the trial rather than again delay getting to the merits of the matter.

The petitioner presented the testimony of two witnesses, the CPA who reviewed all of the accounts in which the decedent and the respondent had an interest

and the respondent as if on cross-examination. The CPA testified about his review of the various accounts and laid out a pattern of the respondent's transferring funds to herself from a number of joint accounts and accounts held by her and her husband in trust for the decedent. He acknowledged that the respondent was signing checks drawn on joint accounts beginning prior to the execution of the decedent's power of attorney appointing the respondent as agent. He also testified as to his attempts to track balances being transferred from one account to another and admitted that he could not verify the source of all funds, whether from decedent or respondent, because his research went back to only 2002. He also testified that he did not see any activity by the respondent in her capacity as agent; all transactions were conducted in her individual capacity. He also confirmed that all bank statements were sent to the decedent and not the respondent.

Upon conclusion of the CPA's testimony, the petitioner called the respondent as if on cross-examination. She testified as to the decedent's wanting to execute a power of attorney for bank account management following a recent hospitalization. She testified as to the creation of a variety of joint bank accounts and "in trust for" accounts prior to the execution of the power of attorney as well as contributions to the accounts made by the decedent, the respondent, and the respondent's husband. She also testified that prior to the execution of the power of attorney, the decedent maintained control over the accounts and had all statements sent to her—the decedent was in charge. Even after the execution of the power of attorney, statements were sent to the decedent's mailing address, not the respondent's.

Throughout all of the pretrial proceedings, the petitioner made the respondent out to be some sort of monster who took advantage of their mother. Given the number of accounts and transactions that the petitioner put at issue, the trial testimony regarding those accounts and transactions was rather cursory in the grand scheme and showed merely that the respondent acted in her individual capacity only and not as agent with respect to a variety of accounts in which the respondent had an interest as either a joint owner or as the trustee of an informal trust account. Every such account was made joint by the decedent or created with funds from such joint accounts, with the exception of accounts that the respondent and her husband created in trust for the decedent from their own funds. There was no testimony to support the respondent's acting as an agent, let alone an agent bent on wrongdoing. Additionally, all transactions were conducted in accordance with a pattern established prior to the decedent's naming the respondent as agent. It is clear to the court that the decedent was aware of the transactions and condoned them, both before and after her appointing respondent as agent.

Even if the respondent had been dealing with funds deposited solely by the decedent, the court cannot consider the respondent's actions to have been "stealing," given the decedent's creation of the joint accounts, which constitutes prima facie evidence of a gift,[3] coupled with

---

3. *E.g. In re Estate of Eastman,* 760 A.2d 16, 19 (Pa. Super. 2000) ("Where a sole owner of a bank account *converts the account into a joint one* owned by himself and another, as evidenced by a duly signed signature card, the transaction is prima facie one of an inter vivos gift." (citations omitted) (emphasis in original)

her knowledge of the transactions and approval thereof. There was absolutely no allegation that the decedent possessed a weakened intellect, was subject to undue influence, lacked testamentary capacity, or was otherwise of a mind subject to the control of the respondent. Being of sound mind, the decedent at no time showed herself to be against the continuation of the pattern of withdrawals and transfers. It is for these reasons that the court hoped that the respondent would make a motion for nonsuit following the petitioner's resting his case, and failing such motion after invitation the court opted to stop the testimony and put an end to the trial. Given the lengthy financial history between the decedent and the respondent, there is no doubt in the court's mind that the decedent wanted these transactions to occur.

In addition to the court's factual determinations going against the petitioner, the petitioner, in the court's view, has additional legal hurdles which he has failed to overcome. First, any claims arising from transactions prior to May 13, 2006 are barred by the applicable two-year statute of limitations. 42 Pa.C.S. §5524, *Maillie v. Greater Delaware Valley Health Care Inc.*, 156 Pa. Commw. 582, 590, 628 A.2d 528, 532 (1993) (claim for breach of fiduciary duty subject to two-year statute of limitations). Second, the petitioner has failed to in any way to rebut the prima facie evidence of donative intent demonstrated by the decedent when she added the respondent to her accounts as a joint owner. Third, it is clear to the court that the petitioner does not have standing in this matter, having an interest in only the personal property of the estate and not the real estate or cash. See *In re Trust Under Agreement of Keiser*, 392 Pa. Super. 146, 150, 572 A.2d 734, 736 (1990) (standing

conferred only on "aggrieved" party adversely affected by the matter he seeks to challenge). He has failed to prosecute this action on behalf of his minor daughter, proceeding and acting in his name alone. Even upon attaining the age of majority, neither daughter has filed any objections or claims of their own. Even the estate administrator has failed to present a claim or objection that would somehow cause the respondent's interests in the joint accounts under the Multiple Party Account Act to fail.[4] See 20. Pa.C.S. §6304(a) (sums remaining on deposit at death of joint owner belong to surviving owner(s) and not estate of decedent absent clear and convincing evidence of different intent). Simply put, this has been a horrible and lengthy witch hunt that has revealed nothing more than a close financial relationship between a mother and daughter.

For the foregoing reasons, the court entered its order of June 9, 2010 dismissing the petitions, objections and motions of the petitioner.

---

4. It is questionable whether the administrator even has standing himself; however, such determination is clouded by the fact that petitioner was allowed, without objection to his standing, to proceed with this action up to the morning of trial when the standing issue was raised for the first time. See *Keiser* (fiduciary is unaggrieved stakeholder who lacks standing when parties in interest are represented in matter at hand).